[No. 44556-1-I.   Division One.   November 13, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE DARDEN, *Appellant*.

*Dana M. Nelson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Summers, Deputy*, for respondent.

AGID, C.J. — Clarence Darden appeals his conviction for Possession of Cocaine with Intent to Deliver, arguing that he was denied his right of confrontation when he was not allowed to fully cross-examine Sergeant Douglas Vandergiessen about his surveillance location. The State concedes that the trial court abused its discretion in sustaining the State's objection to further questioning about the location. Because Sergeant Vandergiessen testified in detail about his location and Darden failed to demonstrate the relevance of further testimony, we reject the State's concession of error and affirm Darden's conviction.

On March 7, 1999, Seattle Police Officers were conducting a "see-pop" operation in the Belltown area of Seattle. Sergeant Vandergiessen was stationed in a fixed position on the west side of Fourth Avenue, three-fifths of a block north of Stewart Street and two-fifths of a block south of Virginia Street in a building between 50 and 60 feet off the ground. Visibility was clear, and lighting on the street was good. His location was on some part of the structure that was outside the building, such as a deck or the roof. He used high quality 10x40 binoculars to view the street below.

Sergeant Vandergiessen initially observed Darden stand-

ing in a group of about six people on the northeast corner of Fourth Avenue and Stewart Street, a little more than half a block from his surveillance location. Darden was wearing a dark knit cap and a parka that had an orange triangle on the left chest and the word "Results" in white letters on the back. Darden appeared to be with another individual, later identified as Germaine Green. Sergeant Vandergiessen observed five transactions: two involving Green and three involving Darden. In each of his exchanges, Darden was seen handing individuals small objects which he pulled from a white wrapping in his hand. Sergeant Vandergiessen testified that he was able to see the objects, which appeared to him to be rocks of cocaine, and that after one exchange, he was able to see currency in Darden's hand.

Darden and Green went to a bus shelter where an arrest team approached them. Sergeant Vandergiessen, who was still in his location above the street, asked the officers to have the suspects step away from the shelter so he could confirm that they were arresting the correct individuals, which he did.[1] He saw Darden again at the West Precinct, where he authorized the strip search of both suspects and participated in searching Darden. During the search, a white wrapping fell out of Darden's sleeve which was consistent with the wrapping the Sergeant saw in his hand on the street. The wrapping contained a substance which tested positive for cocaine. Officers also found $79 in small bills in Darden's pants pocket.

Darden was charged with one count of possession of cocaine with intent to deliver. At his adjudicatory hearing, the following exchange occurred between defense counsel and Sergeant Vandergiessen on cross-examination:

Q. All right, good afternoon, Sergeant Vandergiessen. Just a

---

[1] Before the arrest team arrived, Sergeant Vandergiessen observed another person at the bus shelter wearing a jacket identical to Darden's. He alerted the arrest team and had both individuals step out so that he could ensure that the correct one was arrested. Sergeant Vandergiessen testified that there were "distinctive differences" between the two, including the other man's "very distinctive shoes that stood out," and that the only thing similar about the two was their jackets.

few questions. First to establish a little bit more about your observation point, you've marked it on the diagram there. Can you tell us how many stories above street level you were?

A. I'd feel more comfortable if I told you how many feet I was above rather than limiting it to stories. At that particular location I'm about 50 — between 50 and 60 feet up.

Q. And from that — would it be correct to state that you were on the roof of a building?

A. I —

MS. JOHNSON (Prosecutor): Your Honor, I'm going to object to that question. As the witness has previously indicated, the amount of feet and whether he was on a building or a deck is not relevant.

MR. PIPER (Defense Counsel): I have a right to establish his vantage point for observation.

THE COURT: Well, I'll sustain the objection unless the questioning indicates that a more specific description is necessary. Go ahead.

The defense made no further showing about the relevance of additional questions about the surveillance location. The trial court found Darden guilty as charged.

## DECISION

■■■ Darden claims he was denied his constitutional right to confront and cross-examine witnesses. The State has conceded error on the ground that this case is controlled by our holding in *State v. Reed*, 101 Wn. App. 704, 6 P.3d 43 (2000). In *Reed*, we refused to recognize a surveillance location privilege and held that the trial court committed reversible error by excluding evidence about the officer's surveillance location. But the facts of this case are readily distinguishable from those in *Reed*.

In *Reed*, the officer testified only about his height off the ground. The trial court allowed no testimony about his location in relation to the location of the transaction he observed. By limiting his testimony so severely, the trial court deprived Reed of an opportunity to impeach the

officer's observations. Here, Sergeant Vandergiessen testified with great specificity about his location. Further, he marked his location on a diagram mapping the street. For all intents and purposes, Sergeant Vandergiessen's surveillance location *was* disclosed. Based on the information provided, Darden would have been able to independently verify or refute Sergeant Vandergiessen's ability to observe had he chosen to do so.

A criminal defendant's rights of confrontation and cross-examination are subject to the limitation that the evidence sought must be relevant. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). The State objected to further questioning about the surveillance location on the basis that it was not relevant, and the trial court sustained that objection based not upon privilege, but because it agreed that further details were not relevant. We review a trial court's evaluation of relevance for abuse of discretion. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). Because further testimony about the details of Sergeant Vandergiessen's surveillance location would not have made any fact or circumstance more or less likely to be true, it was not relevant.[2] ER 401. The trial court properly sustained the State's objection to further questioning.

The conviction is affirmed.

WEBSTER and KENNEDY, JJ., concur.

Review granted at 143 Wn.2d 1026 (2001).

---

[2] Moreover, as we held in *Reed*, evidence of the location of a surveillance post is not likely to be relevant when no question is raised about the ability of a witness to observe. In *Reed*, the officer watched the suspect for only a short time and testified that he observed the suspect provide what appeared to be cocaine in exchange for money. However, when the suspect was apprehended less than a minute later, there was no money on him. This gave rise to legitimate questions about the officer's ability to observe the suspect. In this case, Sergeant Vandergiessen observed Darden for nearly an hour. He testified in great detail about his observations of Darden's appearance and his transactions. The evidence found on Darden was consistent with Sergeant Vandergiessen's observations.