[No. 70586-1.   En Banc.]
Argued September 13, 2001.   Decided March 7, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE DARDEN, *Petitioner*.

---

MADSEN, J., concurs in the result only; CHAMBERS, IRELAND, and BRIDGE, JJ., concur by separate opinion.

*Dana M. Nelson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Summers* and *Daniel J. Clark, Deputies,* for respondent.

SANDERS, J. — The question is whether a criminal defendant's right to cross-examine adverse witnesses is trumped by the State's interest to avoid disclosure of a secret law enforcement surveillance location.

The facts arise out of a trial for possession of a controlled substance with the intent to deliver, during which the trial court prohibited the defendant from cross-examining a surveillance officer on the specific location of his observation post. We hold a defendant's confrontation right to challenge the accuracy and veracity of a key witness for the State triumphs over the State's asserted interest to not reveal the precise location of an observation post. In so doing, we limit the compelling-state-interest test from *State v. Hudlow* to the circumstances for which it was crafted: prevention of the introduction of prejudicial evidence at trial. 99 Wn.2d 1, 659 P.2d 514 (1983). We also decline to adopt a new evidentiary privilege encompassing surveillance locations, as such a privilege has not heretofore been recognized under either Washington statute or Washington common law.

I

In the spring of 1998 Clarence Darden was arrested for possession of a controlled substance with the intent to deliver. His arrest was the result of a so-called "see-pop"

operation conducted by the Seattle Police Department. A see-pop operation is proactive, with an emphasis on narcotics, using a fixed surveillance post and one or more arrest teams at street level.

The prosecution's first, and most important, witness at Darden's trial was Sgt. Vandergiessen, the surveillance officer during the operation that lead to Darden's arrest. During his direct examination Sgt. Vandergiessen described the general location of his surveillance post, and drew a map of the area on which he indicated his general location by marking it with an "X." He also marked the street corner he had been observing, describing the distance between his surveillance post and the corner as being a little over half a block. Sgt. Vandergiessen specified his observation post was in a fixed position, and that it was outside and elevated but refused to be more specific, referring only in general terms to the safety of the location.

Sgt. Vandergiessen's direct examination also covered the conditions under which he claimed to have observed various activities at the street corner, including drug transactions involving Darden. According to Sgt. Vandergiessen he was conducting his surveillance using 10x40 binoculars, visibility was clear, and although it was nighttime the lighting at the corner was quite good because of street lamps and light from surrounding business. He also claimed there were no obstructions, not even windows, between the surveillance post and the corner.

When the examination moved to what Sgt. Vandergiessen had seen during the see-pop operation he testified he had been observing six people, including Darden, that night. He claimed he was able to distinguish Darden from the others because Darden wore a dark knit cap and a parka with an orange triangle on the left chest and distinctive white lettering. He testified he witnessed Darden engage in three separate "exchanges" with unidentified third persons, and that he saw some kind of white wrapping in the palm of Darden's hand during each of these exchanges. He also claimed he saw Darden take something

out of the wrapping and give it to the purported "customer." Although he acknowledged he could not see what it was Darden took out of the wrapping, Sgt. Vandergiessen testified he saw what appeared to be rock cocaine in the palm of the hands of the purported customer after each exchange. He also testified he saw money in Darden's hands after one of those exchanges.

After observing Darden for approximately an hour, Sgt. Vandergiessen called in the arrest team. But before the officers could arrive, Darden strolled into a nearby bus shelter where others were already gathered. Sgt. Vandergiessen admitted he could not see inside the bus shelter from his observation post. When the arrest team arrived they therefore had Darden and the others in the bus shelter step outside so that Sgt. Vandergiessen could identify Darden. Sgt. Vandergiessen's description of Darden was the only means by which the arrest team identified Darden as the person to be arrested. After this identification Darden was arrested and brought to the precinct.

At the precinct Darden was strip searched, during which a white wrapping fell from Darden's jacket arm to the floor. Sgt. Vandergiessen testified the wrapping on the precinct floor was consistent with the one he saw in Darden's hands on the street. The wrapping held a content later established to be 1.74 grams of cocaine. Darden also had $79 in his pants pocket.

On cross-examination defense counsel sought to independently verify what Sgt. Vandergiessen could and could not see by discovering the precise location of the observation post. When counsel asked Sgt. Vandergiessen how many stories above street level he was when he saw Darden engage in the drug transactions, the examination proceeded as follows:

[Sgt. Vandergiessen]: I'd feel more comfortable if I told you how many feet I was above rather than limiting it to stories. At that particular location I'm about 50—between 50 and 60 feet up.

[Defense counsel]: And from that—would it be correct to state that you were on the roof of a building?

[Prosecutor]: Your Honor, I'm going to object to that question. As the witness has previously indicated, the amount of feet and whether he was on a building or a deck is not relevant.

[Defense counsel]: I have a right to establish his vantage point for observation.

[The court]: Well, I'll sustain the objection unless the questioning indicates that a more specific description is necessary. Go ahead.

Report of Proceedings (RP) (Apr. 8, 1999) at 33. This exchange is the heart of Darden's appeal.

Throughout the remainder of his cross-examination of Sgt. Vandergiessen, defense counsel was limited to asking general questions about Sgt. Vandergiessen's ability to see the alleged drug transactions involving Darden. In spite of these limitations, this cross-examination revealed another person in the immediate area had worn a jacket identical to the one worn by Darden and that this person actually was in the bus shelter with Darden when the arrest team arrived. According to Sgt. Vandergiessen, his only means of telling the two apart was the shoes the two were wearing.

The prosecution called only two other witnesses. Following Sgt. Vandergiessen was a member of the arrest team that had arrested Darden. Last, the State called a forensic scientist who established the compound found on Darden after his arrest was cocaine. Of the three, only Sgt. Vandergiessen had seen the drug transactions Darden allegedly conducted.

After conviction of possession of a controlled substance with the intent to deliver Darden appealed, claiming the trial court violated his confrontation rights by prohibiting him from cross-examining Sgt. Vandergiessen on his specific location. *State v. Darden*, 103 Wn. App. 368, 369, 12 P.3d 650 (2000). On appeal the State initially conceded the trial court abused its discretion, but the Court of Appeals summarily rejected this concession instead concluding Sgt. Vandergiessen's precise location was not relevant. *Id.* It

then affirmed Darden's conviction, causing him to seek discretionary review in this court.

We granted his petition to determine whether a criminal defendant's right to cross-examine adverse witnesses may be limited to avoid disclosure of a secret law enforcement surveillance location, and we hold that it may not.

## II

Although the dispositive issue before us concerns the confrontation clause, ultimately we are asked to review the trial court's ruling on the admissibility of Sgt. Vandergiessen's surveillance location. A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). Abuse exists when the trial court's exercise of discretion is "manifestly unreasonable or based upon untenable grounds or reasons." *Powell*, 126 Wn.2d at 258. Similarly, a court's limitation of the scope of cross-examination will not be disturbed unless it is the result of manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984). However, the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, credibility, or foundational matters. *See State v. Dickenson*, 48 Wn. App. 457, 466, 740 P.2d 312 (1987).

## A

Darden argues the trial court violated his confrontation rights when it prevented him from discovering Sgt. Vandergiessen's precise surveillance location. According to Darden, because his conviction for possession with intent to deliver was utterly dependent on Sgt. Vandergiessen's eyewitness testimony, the location of the observation post was undeniably relevant. Absent Sgt. Vandergiessen's testimony there was no proof of Darden's intent to deliver.

Precluding cross-examination on this point, the trial court effectively denied Darden the only means available to contest the charge against him.

The State responds Sgt. Vandergiessen testified in detail about what he observed, and the conditions under which he did so, and argues Darden has failed to show disclosure of additional details regarding Sgt. Vandergiessen's location was of even minimal relevance. In the State's view the defense made no argument at trial that further details were needed to verify Sgt. Vandergiessen's ability to observe, or to conduct further cross-examination, wherefore the trial court properly excluded the evidence.

## B

The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions. U.S. CONST. amend VI; CONST. art. I, § 22; *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Hudlow*, 99 Wn.2d at 15. In the constitutional sense, "confrontation" means more than mere physical confrontation. *Davis*, 415 U.S. at 315. The primary and most important component is the right to conduct a meaningful cross-examination of adverse witnesses. *State v. Foster*, 135 Wn.2d 441, 455-56, 957 P.2d 712 (1998). The purpose is to test the perception, memory, and credibility of witnesses. *State v. Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982); *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). Confrontation therefore helps assure the accuracy of the fact-finding process. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Whenever the right to confront is denied, the ultimate integrity of this fact-finding process is called into question. *Id*. As such, the right to confront must be zealously guarded. *State v. Kilgore*, 107 Wn. App. 160, 184-85, 26 P.3d 308 (2001).

However, the right to cross-examine adverse witnesses is not absolute. *Chambers*, 410 U.S. at 295. Courts may,

within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative. *State v. Jones*, 67 Wn.2d 506, 512, 408 P.2d 247 (1965). Since cross-examination is at the heart of the confrontation clause, it follows that the confrontation right is also not absolute. The confrontation right and associated cross-examination are limited by general considerations of relevance. *See* ER 401, ER 403; *Hudlow*, 99 Wn.2d at 15.

Here the question of relevancy centers on the need to locate Sgt. Vandergiessen's alleged point of observation so as to challenge the accuracy and veracity of testimony that he saw Darden engage in three drug transactions. The Court of Appeals held Darden had no right to discover Sgt. Vandergiessen's observation post, concluding this information was of no relevance. *Darden*, 103 Wn. App. at 372. But to so hold, it is necessary to accept the State's imprecise justifications at face value, not to mention reject the State's initial concession that the trial court had abused its discretion when it prevented Darden from challenging Sgt. Vandergiessen's ability to observe.

The test supposedly used by the Court of Appeals to decide whether Darden could discover Sgt. Vandergiessen's surveillance location was that set forth in *Hudlow*, 99 Wn.2d 1. Under *Hudlow*, the confrontation right is subject to the following limitations: (1) the evidence sought must be relevant and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial as to disrupt the fairness of the trial. *Id.* at 15.

The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible. *Id.* at 16. However, relevant evidence may be deemed inadmissible if the State can show a compelling interest to exclude prejudicial or inflammatory evidence. *Id.* (citing *People v. Redmon*, 112 Mich. App. 246, 315 N.W.2d 909, 913-14 (1982)).[1]

---

[1] In dicta, the *Hudlow* court cautiously stated when the evidence sought is of high probative value "it appears no state interest can be compelling enough to

Thus, the *Hudlow* test requires a three-prong approach. First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld.

In *State v. Reed* the Court of Appeals applied the *Hudlow* test to determine whether the State could withhold the location of an observation post in a see-pop operation. 101 Wn. App. 704, 707, 6 P.3d 43 (2000). Much like the case at bar, the outcome of the State's case in *Reed* hinged on the testimony of the observing officer. When the defense sought to discover the officer's location the trial court limited the defendant's cross-examination of the observing officer to height above ground, direct line of sight, and matters relating to the officer's ability to see, such as foliage on trees or buses in the way. *Id.* at 707-08. Applying the *Hudlow* test the Court of Appeals reversed, finding no justification for withholding the location of the observation post. *Id.* at 716. As here, the officer's observations formed the principal evidence in the State's case.

Although the *Reed* court reached the correct result based on the facts before it, it misapplied *Hudlow*. A careful study of the *Hudlow* test reveals it was not designed to address the competing interests at stake in a case when a defendant seeks to discover a secret observation post. The State's interest to keep a surveillance location secret stems from the public need for effective law enforcement. *See infra*, at 625-26. In stark contrast, the State's interest under *Hudlow* is to preclude evidence that may interfere with the fairness of the trial. *Hudlow*, 99 Wn.2d at 15-16 (excluding rape

preclude its introduction." *Hudlow*, 99 Wn.2d at 16. This statement has been cited with approval by later courts as an established premise of law. *See, e.g., State v. Reed*, 101 Wn. App. 704, 709, 6 P.3d 43 (2000); *State v. Barnes*, 54 Wn. App. 536, 538, 774 P.2d 547 (1989).

victim's prior sexual history); *State v. Morley*, 46 Wn. App. 156, 160, 730 P.2d 687 (1986) (same); *State v. McDaniel*, 83 Wn. App. 179, 187, 920 P.2d 1218 (1996) (excluding assault victim's admission to giving false testimony about her drug use); *State v. Barnes*, 54 Wn. App. 536, 539, 774 P.2d 547 (1989) (characterizing as compelling the state interest in assuring witnesses come forward with testimony without fear of having prior convictions or misconduct revealed); *State v. Martinez*, 38 Wn. App. 421, 424, 685 P.2d 650 (1984) (same); *cf. Redmon*, 315 N.W.2d at 914 (holding state interest underlying the evidentiary rule precluding impeachment by convictions more than 10 years old must yield to the defendant's right to confrontation). The justification, for example, to protect a rape victim from prejudice resulting from the introduction of irrelevant sexual background, as was the situation in *Hudlow*, is very different from the justification to protect the secrecy of a surveillance post. Whereas the *Hudlow* test has flavors of ER 403, the State interest to keep a surveillance location confidential rings of privilege. The *Hudlow* test is therefore inapplicable to the situation in *Reed*.

For the same reason the *Hudlow* test should not have been applied in *Reed*, it does not apply here. Simply put, the situation at hand is different from the one for which the *Hudlow* test was crafted.[2] The State is not arguing the location of Sgt. Vandergiessen's surveillance post must be kept secret to preclude evidence so prejudicial as to disrupt the fairness of the trial. *Cf. Hudlow*, 99 Wn.2d at 15. The only suggestion of any interest justifying nondisclosure is Sgt. Vandergiessen's general comment about his desire not to risk the safety of those whose premises were used as a surveillance location.

---

[2] In fact, the State argues along similar lines. Part of its justification for urging this court to recognize a surveillance location privilege is that the *Hudlow* test does not apply to the situation at hand. *See* State's Suppl. Br. at 17.

C

Instead, we apply basic rules of evidence to determine whether the trial court violated Darden's confrontation rights when it denied him the opportunity to cross-examine Sgt. Vandergiessen about the location of his observation post. As in any case, we must first determine whether the location of the surveillance post is relevant. There is no right, constitutional or otherwise, to have irrelevant evidence admitted. *See Hudlow*, 99 Wn.2d at 15 (citing *Washington*, 388 U.S. at 16). Evidence is relevant if it has a tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. ER 401. Evidence of a witness' ability to observe the events testified to is relevant. *See McDaniel*, 83 Wn. App. at 186; *cf.* ER 602 (limiting a witness' competency to matters of which he or she has personal knowledge).

Here the fact of consequence was Sgt. Vandergiessen's ability to observe and identify Darden as the person who allegedly conducted three transactions. Since he was the only one of the three prosecution witnesses who saw the alleged transactions, he was a crucial witness. It was Sgt. Vandergiessen's observations that gave law enforcement probable cause to arrest Darden. It was his description of Darden that enabled the arrest team to separate Darden from the other person wearing the identical jacket at the bus shelter. Lastly, it was his testimony that enabled the prosecution to convict Darden of possession with the intent to deliver rather than the lesser offense of possession.

■ To convict for possession of controlled substance with intent to deliver, the State must show the defendant intended to deliver the substance presently or at some future time. RCW 69.50.401(a); *State v. Davis*, 79 Wn. App. 591, 904 P.2d 306 (1995). Naked possession of a controlled substance is generally insufficient to establish an inference of an intent to deliver. *State v. Brown*, 68 Wn. App. 480, 485, 843 P.2d 1098 (1993) ("[c]onvictions for possession with intent to deliver are highly fact specific and require sub-

625

stantial corroborating evidence in addition to the mere fact of possession"). Rather, reported Washington cases in which intent to deliver was inferred from possession of narcotics all seem to involve at least one additional factor. *See, e.g.*, *State v. Llamas-Villa*, 67 Wn. App. 448, 451, 836 P.2d 239 (1992) (additional factor was officer's observations); *State v. Mejia*, 111 Wn.2d 892, 896, 766 P.2d 454 (1989) (additional factor was informant's tip); *State v. Lane*, 56 Wn. App. 286, 297, 786 P.2d 277 (1989) (additional factor was drug-processing equipment); *State v. Simpson*, 22 Wn. App. 572, 573, 590 P.2d 1276 (1979) (same).

Finding Sgt. Vandergiessen's location relevant, we must then determine whether the State has provided a lawful justification to withhold that evidence. Relevant evidence may be excluded in a number of situations. For example, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

The State maintains Sgt. Vandergiessen's precise location was not discoverable because of the extent of his testimony about his location on direct examination, and because Darden failed to show how discovering more information about the location would have aided him in his cross-examination. This argument is not persuasive.

"It is no answer to say, as the government does, that the defense has failed to cast substantial doubt on the accuracy of [the observer's] testimony. Creating such doubt would have been one of the objectives of cross-examination following revelation of the observation post."

*Reed*, 101 Wn. App. at 715 (alteration in original) (quoting *United States v. Foster*, 986 F.2d 541, 544 (D.C. Cir. 1993)). The State must justify preventing the defendant from challenging the criminal charges by independently verifying the officer's observations. The State cannot meet its burden by blaming the defense for not achieving the very

objective the State seeks to prevent the defense from achieving.

The State urges exclusion of this relevant line of testimony based on Sgt. Vandergiessen's general statement referring to the safety of those whose premises he used as an observation post. *See supra*, at 616. That is no ground to prevent relevant cross-examination of the State's key witness.

Nor was this error harmless or otherwise within the trial court's discretion. The State's entire case for possession with intent to deliver hinged on Sgt. Vandergiessen's testimony. *See supra*, at 619.

## III

The State presents an alternative justification for withholding Sgt. Vandergiessen's surveillance location in the form of the so-called surveillance location privilege, which we are urged to recognize. But its arguments are again unpersuasive.

■■■ Before setting out to determine whether this State should recognize a surveillance location privilege, it is important to note recognition of new evidentiary privileges in criminal cases is generally disfavored in Washington. *See State v. Maxon*, 110 Wn.2d 564, 567-69, 756 P.2d 1297 (1988). This skeptical view is necessary because privileges limit the introduction of relevant evidence.

■■■ The State argues this court should recognize a surveillance location privilege by extending RCW 5.60-.060(5) beyond its language to encompass surveillance locations. However, statutory privileges under RCW 5.60.060 stem from communications that in one form or another are considered confidential. *See, e.g., State ex rel. Haugland v. Smythe*, 25 Wn.2d 161, 168, 169 P.2d 706 (1946). This statute provides:

> A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure.

RCW 5.60.060(5). Thus, accepting the State's argument would require us to somehow consider a geographical location to be a confidential communication. Although it may be that some communications between civilians and law enforcement surrounding a surveillance operation might qualify as privileged, it is absurd to claim a location *per se* is communication. Perhaps that is why the State, other than to summarily assert "[t]he location of a confidential surveillance point falls within the parameters of RCW 5.60.060(5)," has put forth no grounds for broadening the scope of this statutory privilege. *See* State's Suppl. Br. at 8. In sum, therefore, no lawful basis has been identified to recognize a statutory surveillance location privilege.

The State argues in the alternative we should recognize a surveillance location privilege under the common law. Although most evidentiary privileges in Washington are statutory, this court does have the power to recognize a privilege when doing so is clearly warranted. *Maxon*, 110 Wn.2d at 569.

Even so, the State has failed to show a privilege covering the location of a surveillance post exists under *Washington* common law. The State points to other jurisdictions which have adopted such a privilege as if to suggest this is sufficient justification for Washington to do the same. But those courts made the decision to adopt the privilege based on state and federal laws, which differ in many respects from Washington law on this issue. For example, when federal courts decided to recognize a surveillance location privilege they did so under Federal Rule of Evidence 501, which is entirely different from Washington's Rule of Evidence 501. *See, e.g., United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981) (applying FED. R. EVID. 501); *compare* FED. R. EVID. 501 *with* ER 501. The mere fact other jurisdictions have chosen to adopt a particular privilege is insufficient justification for this court to curtail the confrontation rights of criminal defendants appearing in Washington courts.

■ Thus, we stand without authority from Washington statutes or common law to recognize a surveillance location privilege. Absent such basis, we decline the State's urging we invent one here.

Nor is the State rendered hapless by our declination to recognize a surveillance location privilege. The State has the options it has always had: It can either present a surveillance officer's testimony, in which case the location may be discoverable as set forth above, or the State can choose not to rely on the surveillance officer's testimony, in which case his or her precise location may not be an issue. The decision rests with the State. The consequences of that decision should also rest with the State.

The Court of Appeals is reversed and the case is remanded for a new trial.

ALEXANDER, C.J., and SMITH, JOHNSON, and OWENS, JJ., concur.

MADSEN, J., concurs in the result.

CHAMBERS, J. (concurring) — I respectfully disagree with the majority's bright-line rule that a defendant's right of confrontation always trumps the State's interest in keeping the location of a police surveillance site secret. However, I concur in the result because here the court excluded the evidence without weighing the State's interest against the Defendant's need for confrontation.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution grant criminal defendants a right to confront and cross-examine adverse witnesses. However, as the majority concedes, the right is not absolute. If the State shows a compelling reason to exclude prejudicial or inflammatory evidence, the evidence may be inadmissible. *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983). The Court of Appeals recently applied a test developed by the *Hudlow* court to determine whether a defendant has the right to determine the location of a police surveillance site:

> The right to confront witnesses is subject to the following limitations: (1) the evidence must be relevant; and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial that it disrupts the fairness of the fact-finding process. If the defendant shows that the evidence is minimally relevant, the evidence must be admitted unless the State can demonstrate a compelling state interest for excluding the evidence. If the evidence is characterized as being of high probative value, there can be no state interest compelling enough to preclude its introduction.

*State v. Reed*, 101 Wn. App. 704, 709, 6 P.3d 43 (2000) (citing *Hudlow*, 99 Wn.2d at 16).

While declining to adopt a new privilege to cover the situation, the *Reed* court held that "[b]ecause Officer Jokela's testimony was critical to the State's proof that Reed actually delivered the drugs, Reed should have been allowed to learn the officer's location and independently verify the accuracy and veracity of Officer Jokela's statement." *Reed*, 101 Wn. App. at 713.

I agree with the procedure followed by the Court of Appeals in *Reed* to determine whether there is an overwhelming State interest in keeping the location of the surveillance site secret. In these cases, there should be an in camera hearing to evaluate the three parts of the *Hudlow* test: (1) the evidence must be of at least minimal relevance; (2) if the evidence is relevant, the burden is on the State to show the evidence is so prejudicial that it would disrupt the fairness of the fact finding process at trial; and (3) the State's interest in excluding prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld.

Where the location of the officers' point of observation is of minimal probative value to the defendant and the need of the government to keep the location secret is great, automatic disclosure of the location, as required by the majority, is unnecessary to a constitutionally fair trial.

Here, as in *Reed*, the evidence the Defendant sought to introduce was relevant to the issue of how clearly the officer could view the drug transaction. Because the court failed to hold an in camera hearing to determine whether the evidence met the other two parts of the test, I agree with the majority that this Court should reverse and remand for a new trial.

IRELAND and BRIDGE, JJ., concur with CHAMBERS, J.