IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70838-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIRANDA MARIE JENKINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 26, 2015 |
| | ) | |

VERELLEN, A.C.J. — Prior to Miranda Jenkins' trial for forgery, the court excluded

evidence relating to prior misconduct of an investigating police officer. The court ruled

that the evidence was irrelevant, prejudicial, and would be distracting to the jury.

Jenkins challenges that ruling on appeal, arguing that it violated her constitutional rights

to confront and cross-examine witnesses and to present a defense. Because the

court's ruling was well within its discretion and Jenkins' remaining argument is raised for

the first time on appeal, we affirm.

## FACTS

Based on evidence that Jenkins attempted to cash a forged check at a bank, the

State charged her with forgery.

Prior to trial, the State moved in limine to preclude the defense from asking

Detective Brian Taylor about his alleged misconduct in a prior case. The misconduct

involved an alleged unlawful seizure of a cellphone and an improper interrogation

technique. Defense counsel maintained this evidence was relevant to the defense theory that the police, including Detective Taylor, mishandled the investigation of Jenkins' case. Defense counsel noted that Detective Taylor returned a cellphone to Jenkins without searching it for text messages that might have helped the defense and that he refused to log into evidence an envelope that Jenkins brought to the police station after her arrest.

In excluding the misconduct evidence, the court noted that Detective Taylor's alleged unlawful actions in the prior case were unlike his alleged "sloppy" investigation in Jenkins' case.[1] The court concluded that the evidence was "unrelated," "confusing, prejudicial, and not relevant," and that it would be "a big distraction and very inappropriate."[2]

The evidence at trial established that on July 31, 2012, Jenkins entered a Wells Fargo bank in SeaTac and attempted to cash a check written for $1,830. The bank teller, Lashanya Topps, quickly became suspicious. Topps testified that Jenkins was unusually talkative and appeared anxious and "just kind of shifty."[3] Jenkins claimed the check was payment for cleaning rental units, but in Topps' experience, the check amount was unusually large for that kind of work. The check itself was unusual in that it was business-size, but it bore a personal name, not a business name, and a handwritten payee and amount rather than the usual typed information.

---

[1] Report of Proceedings (RP) (July 11, 2013) at 13.

[2] Id. at 13-14.

[3] Id. at 103.

Topps called the account owners, Texas residents Kimberly and David Smith, while Jenkins waited. The Smiths said they owned no property in Washington, had never met Jenkins or mailed her a check, and had never given her permission to cash or possess any of their checks. Topps called 911.

A short time later, Detective Ryan Abbott of the King County Sheriff's Department arrived at the bank and spoke with Jenkins. She told him a different story than she told Topps. She said the check was payment for a house painting job she received through an ad she placed on Craigslist. Although she said she spent a week painting the house, she could not tell Detective Abbott where the house was located or even what city it was in. She claimed someone had given her a ride to the jobsite every day using a GPS.

Jenkins also told Detective Abbott that she received the check by mail in a United States Postal Service (USPS) envelope. She handed him a USPS shipping label that allegedly accompanied the check in the mail. Using his laptop, Deputy Abbott ran the tracking number on the label through the USPS website. The number came back as unverifiable. Deputy Abbott then placed Jenkins under arrest.

Jenkins mentioned to Deputy Abbott that her boyfriend, Tom Nist, brought her to the bank in his Bronco. Several officers then went to the parking lot to find Nist.

Deputy Hansen Hsu testified over a hearsay objection that he "did a sweep of [Nist's] Bronco, as he mentioned that he had a shotgun in there."[4] Deputy Hsu located the shotgun and ran the serial number to determine whether it was stolen. Deputy Allen Tag testified, again over a hearsay objection, that Deputy Hsu told him there was a

---

[4] Id. at 159.

3

firearm in Nist's Bronco. Deputy Hsu and Deputy Tag both testified that Nist made statements indicating the gun was his and that he kept it in his Bronco.

Deputy Abbott testified that he collected a handwriting sample from Jenkins. He placed the forged check and Jenkins' cellphone into evidence and later sent the handwriting sample to the Washington State Patrol Crime Laboratory for analysis. Forensic scientist Andrew Szymanksi concluded that Jenkins had signed the endorsement signature on the back of the check, that it was highly probable that she did not author the payee information on the front, and that he could neither identify nor eliminate her as the author of the payor signature.

Detective Taylor testified that he prepared the case for filing. He ordered a copy of Jenkins' driver's license, wrote the certification for determination of probable cause, and referred the case to the prosecutor's office. Shortly after the referral, Jenkins and Nist came to Taylor's precinct with a USPS Priority Mail envelope. Jenkins told Taylor that the forged check came to her in that envelope. The envelope lacked postal markings, a postal slip, or any signs that it had come through the mail. Detective Taylor testified that "[t]hese envelopes are out in the public area of the Post Office for anybody to grab, so I couldn't prove that this envelope came through the mail, so I didn't think it was relevant."[5] Detective Taylor did not enter the envelope into evidence or document its existence because he "didn't feel it would help the case at all."[6]

---

[5] Id. at 26.
[6] Id. at 25.

4

Detective Ricky Bowen testified, however, that *he* spoke with Jenkins at the precinct and took possession of the envelope. He placed the envelope in Detective Taylor's in box because Detective Taylor was not present.

After Detective Bowen testified, defense counsel asked the court to reconsider its ruling excluding Detective Taylor's prior misconduct. Counsel stated, "I'm just making my motion for the record, and I'll leave it at that."[7] The State reiterated its position that the evidence was irrelevant, prejudicial, and confusing. The court maintained its prior ruling.

Neither Jenkins nor Nist testified at trial. Defense investigator Russ Williams, a former USPS employee, acknowledged that the envelope Jenkins left with Detective Taylor had no postal markings, return address, or tracking numbers typically found on items processed through the mail. Also, Jenkins' postal service tracking slip was not printed on the type of paper typically used for printing such slips.

Jenkins' father, Billy Jenkins, testified that he had memory problems and could not "pull things together right now."[8] Nevertheless, he testified that Jenkins lived with him around the time of her arrest. He remembered her receiving multiple checks in the mail and her saying that some of them were bad checks. He later said he remembered Jenkins saying that some of the checks "didn't look right."[9] He said he told her she should go to the bank "to see if these checks are legitimate."[10]

---

[7] Id. at 176.

[8] RP (July 16, 2013) at 73.

[9] Id. at 82-83.

[10] Id. at 86.

In closing argument, the prosecutor focused on Jenkins' behavior at the bank, her implausible and inconsistent stories, the nature of the check itself, and the absence of any evidence that the envelope was ever mailed. Defense counsel conceded that the check was forged, but argued that the State failed to prove that Jenkins' knew it was forged. He emphasized that the facts presented by the State came "from an incomplete, faulty and fundamentally flawed investigation."[11]

The jury found Jenkins guilty of forgery. She appeals.

## DECISION

Jenkins first contends the court violated her constitutional rights to confront and cross-examine witnesses, to present a defense, and to a fair trial when it excluded evidence of Deputy Taylor's prior misconduct. We disagree.

The United States and Washington Constitutions guarantee criminal defendants the right to confront and cross-examine adverse witnesses.[12] Although the right to confrontation should be zealously guarded, that right is not without limitation.[13] The right to confrontation and the associated right to cross-examine adverse witnesses are limited by general considerations of relevance.[14] And if the evidence involves the prior misconduct of a witness, relevance is also examined in light of ER 608.[15] In such cases, "a trial court may consider whether the instance of misconduct is relevant to the

---

[11] Id. at 152.

[12] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Smith, 148 Wn.2d 122, 131, 59 P.3d 74 (2002).

[13] State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

[14] Id.; State v. O'Connor, 155 Wn.2d 335, 348-49, 119 P.3d 806 (2005).

[15] O'Connor, 155 Wn.2d at 349.

witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial."[16] "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible."[17]

Once a showing of relevance is made, courts must consider whether the evidence is so prejudicial as to disrupt the fairness of the fact-finding process and balance any prejudice against the defendant's need for the information sought.[18] In general, "[t]he need for cross-examination on misconduct diminishes with the significance of the witness in the state's case."[19] The trial court's ruling is reviewed for abuse of discretion.[20]

Applying these principles here, we conclude the trial court did not abuse its discretion. Evidence is relevant if it has a tendency to make the existence of any fact of consequence to the action more or less probable than it would be without the evidence.[21] Jenkins contends the fact of consequence in her trial "was whether [she] knew the check was forged."[22] She argues that "[l]aw enforcement's investigation into the origins of this check would tend to make this fact more or less probable."[23] She then

---

[16] Id.

[17] Darden, 145 Wn.2d at 621.

[18] Id. at 622.

[19] State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001).

[20] O'Connor, 155 Wn.2d at 351.

[21] ER 401.

[22] App. Br. at 9.

[23] Id.

argues that "Detective Taylor's prior misconduct is probative to the quality of the investigation conducted in Ms. Jenkins's case."[24]

Jenkins fails to establish relevance for several reasons. First, Jenkins' argument is that *law enforcement's investigation*, not the prior misconduct evidence, has a tendency to make the fact of consequence more or less probable, and that the prior misconduct evidence is relevant because it is probative of the quality of the investigation. Thus, the logical connection between the evidence and the fact to be proved at trial is "simply too attenuated" to establish relevance.[25]

Second, as the trial court correctly noted, Detective Taylor's misconduct in the prior case, i.e., an unlawful seizure of a phone and an improper interrogation, was distinctly different from and unrelated to his alleged sloppy investigation in the instant case. Detective Taylor performed no interrogations in Jenkins' case and was not accused of unlawfully seizing evidence. The prior misconduct evidence would thus shed no light on either the quality of Detective Taylor's investigation in this case or Jenkins' knowledge that the check was forged.

Finally, to the extent Jenkins' arguments could somehow be read as implying that the misconduct evidence was relevant to Detective Taylor's credibility, she fails to demonstrate, nor do we perceive, any connection between that evidence and his "veracity on the stand."[26] The trial court was well within its discretion in excluding the prior misconduct evidence.

---

[24] Id. at 10.

[25] See O'Connor, 155 Wn.2d at 352.

[26] See id. at 349.

Jenkins next contends the court abused its discretion in allowing testimony concerning the firearm found in her boyfriend's truck. Jenkins contends the evidence was irrelevant and highly prejudicial. But Jenkins did not object to the evidence on those grounds below. Her sole objection below was that the testimony was hearsay. We generally do not review arguments raised for the first time on appeal.[27] Jenkins offers no basis for us to undertake such review in this case. We decline to do so.

Affirmed.

WE CONCUR:

---

[27] RAP 2.5(a).