IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,           )     No. 72129-1-I
                               )
            Respondent,        )
                               )
      v.                       )     UNPUBLISHED OPINION
                               )
STEVE MICHAEL MAAS,            )
                               )
            Appellant.         )     FILED: September 21, 2015
_____)

SCHINDLER, J. — Steve Michael Maas appeals the jury conviction of attempting to

elude a pursuing police vehicle in violation of RCW 46.61.024(1). Because sufficient

evidence supports finding Maas drove in a "reckless manner," and the trial court did not

abuse its discretion in sustaining a relevancy objection, we affirm.

Everett Police Department Officer Anatoliy Kravchun was on patrol in an

unmarked police vehicle on the evening of April 10, 2014. At about 9:30 p.m., Officer

Kravchun ran the license plate number of a white pickup truck parked at a gas station

through the State's vehicle registration database. The registered owner and driver

Steve Michael Maas had an outstanding arrest warrant for a probation violation. Officer

Kravchun decided to arrest Maas and called for backup.

When Maas left the gas station, Officer Kravchun followed the truck north about

three miles to central Everett. Everett Police Department Officer Duane Wantland

responded to Officer Kravchun's call for backup. Officer Kravchun and Officer Wantland followed Mass as he turned south onto Jefferson Avenue. Streets in the area are laid out in a grid pattern with cross streets. On Jefferson, the first four marked cross streets south of Madison Street are Columbia Avenue, Adams Avenue, Monroe Avenue, and Jackson Avenue. Yield signs control some of the intersections. The intersection of Jefferson and Jackson is a four-way stop with stop signs on each corner. This part of Jefferson Avenue runs through a neighborhood of family homes. The posted speed limit on Jefferson is 25 m.p.h.

Officer Kravchun activated the emergency lights and siren of his unmarked police vehicle to signal Maas to stop. Officer Wantland also activated the emergency lights of his police vehicle. Maas did not stop. Maas accelerated southbound down Jefferson driving approximately 50 m.p.h. Maas sped through at least one yield sign without slowing down or braking. After chasing Maas for a few seconds, Officer Kravchun decided the chase was "getting dangerous" and terminated the pursuit in compliance with Everett Police Department policy. As Officer Kravchun pulled over, he saw Maas turn right at the stop sign on the corner of Jefferson and Jackson without stopping. A car that was already in the intersection "had to sharply stop to avoid getting hit." Officer Kravchun and Officer Wantland later located the pickup truck about half a mile away.

Officer Kravchun arrested Maas and read him his Miranda[1] rights. After Officer Kravchun advised Maas of his Miranda rights, Maas agreed to speak with Officer Kravchun. Maas told Officer Kravchun that "he knew we were the police." When Officer Kravchun asked Maas why he "ran from us," Maas "said he didn't want his truck to get stolen or towed."

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

The State charged Maas with felony attempting to elude a pursuing police vehicle in violation of RCW 46.61.024(1). The State also alleged that Maas committed the offense while on community custody, RCW 9.94A.525(19). Maas entered a plea of not guilty.

Before trial, the court held a CrR 3.5 hearing. The court ruled the statements Maas made to Officer Kravchun were admissible at trial. Maas stipulated he was on community custody at the time of his arrest.

Maas also argued the court should rule Officer Kravchun and Officer Wantland could not estimate Maas's speed. The court ruled the officers could testify regarding the speed Maas was driving if the State laid a proper foundation.

Officer Kravchun, Officer Wantland, and Snohomish County 911 records custodian Laurin Goodwin were the only witnesses to testify during the two-day jury trial.

Officer Kravchun testified that he is a six-year veteran with the Everett Police Department and a member of the anticrime team. The purpose of the anticrime team is to "proactively look for people who have warrants and target certain problem areas."

Officer Kravchun testified that he estimates vehicle's speed on a daily basis and his ability to estimate speed visually has improved over time with experience.

> Q   Okay. And with regard to — let's talk a little bit about stopping
>      people for speeding.
>          How are you able to determine if somebody's going too fast?
> A    I'm not radar certified, so if I were to ever stop someone for
>      speeding, I would have to pace them. Or say I'm going 25 in a 25-
>      mile-per-hour zone and someone goes flying by me, then it's pretty
>      obvious.
> Q   Okay. And how many times — how many hours a day do you
>      actually spend in the car?
> A   Probably too many.

3

> Q    And how many times a day during the course of your career — and if it's not consistent, let me know — but how often do you find yourself visually estimating somebody's speed?
> A    Probably daily as I'm driving around.
> Q    Okay. And has that become — do you think you've become better at that over the course of time?
> A    Yes.
> Q    Okay. And why is that?
> A    The more I see it, the more I, I guess, experience it, the better I get at it.

Officer Kravchun testified that Maas was driving at approximately 50 m.p.h.

> Q    [W]ere you able to make a visual estimation of [Maas's] speed, based on your training and experience?
> A    I estimated he was going about 50 miles an hour.

Officer Kravchun testified he knew Maas's vehicle was accelerating because "[i]t was quickly pulling away from my car, and I was doing at least the speed limit. I don't think I was going slow. I don't know exactly what speed I was going, but I know he was going a lot faster because he was quickly getting away from me." Officer Kravchun also testified Maas drove through several yield signs without slowing down, failed to stop at a stop sign, and forced another vehicle to stop to avoid a collision.

> Q    And during that entire pursuit, did you ever see brake lights on [Maas's] car?
> A    No. So about here he goes through this yield intersection without slowing down.
> Q    Or stopping?
> A    Or stopping.
> Q    Okay.
> A    And then, at this point, I begin to decide that it's getting dangerous. So I start pulling over towards the side of the road.
> And about at the second yield sign, I've turned my lights off and I've stopped. And I could still see down that hill and I can see the stop sign and I saw that there was a car in that intersection.
> And I saw Mr. Maas took a right turn at that stop sign without stopping, and that other car had to sharply stop to avoid getting hit.

Officer Wantland is a 28-year veteran of the Everett Police Department. Officer Wantland testified that he has experience estimating the speed of a vehicle.

Q    And let me back up and just ask you a couple preliminary questions.
       How are you — based on your training and experience, how do you — how are you able to estimate speed? If you can just tell us.
A    Well, I have worked traffic enforcement some in my past. I'm not much of a traffic officer, but I have run some radar in my career. And part of that is estimating speed.
Q    Can you say approximately how many times in your career you've later — you've estimated somebody's speed?
A    How many times?
Q    Yes. Just — you do it all the time?
A    Numerous. I mean, yeah. There's — I mean, I guess you estimate people's speed if you're working a neighborhood and, you know, you see somebody go by you. I can pretty well judge if somebody's over the speed limit in the neighborhood, or the posted speed.
Q    Okay.
A    It's just from years of working as patrol officer, I guess.

Officer Wantland estimated Maas was driving between 45 and 50 m.p.h.

Q    Were you able to — without telling me a speed, were you able to estimate a speed at which Mr. Maas was traveling at the apex, I guess, at the height of his speed?
A    Oh, I would say, I mean, my estimation would be — it wasn't a high rate of speed, but I would say it was 45 to 50 miles an hour. That's just an estimation on my part.

Officer Kravchun and Officer Wantland testified that all police vehicles are equipped with emergency lights and a siren. The State published a video demonstrating the operation of the emergency lights and siren of Officer Kravchun's vehicle.

The court instructed the jury that to convict Maas, it must find beyond a reasonable doubt that "while attempting to elude a pursuing police vehicle, the defendant drove his vehicle in a reckless manner." The jury returned a verdict of guilty. Maas appeals.

5

Maas contends insufficient evidence supports his conviction for attempting to elude a police vehicle. Specifically, that the evidence is insufficient to show that he drove in a "reckless manner" as required by RCW 46.61.024(1).

RCW 46.61.024(1) states, in pertinent part:

Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

The court instructed the jury on the meaning of driving in a "reckless manner." Instruction no. 7 states, "To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences." Maas did not object to the instruction. A jury instruction that is not objected to becomes the law of the case. State v. Willis, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005).

Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000); State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Viewing this evidence in the light most favorable to the State, a rational jury could find that Maas drove "in a rash or heedless manner, indifferent to the consequences." The undisputed testimony showed Maas drove approximately 45 to 50 m.p.h. through a residential neighborhood at night, he was driving approximately twice the posted speed

limit, and he did not slow down or stop at a yield sign. Maas also did not stop at a stop sign, requiring another vehicle that was already in the intersection to "sharply stop to avoid getting hit."

In the alternative, Maas contends he is entitled to reversal because the court violated his constitutional right to present a defense by sustaining the State's objection to a question about whether a radar gun is necessary to prove a traffic infraction. Maas also argues the court committed reversible evidentiary error when it sustained the objection. We disagree.

The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). However, the right to cross-examine adverse witnesses is not absolute. Darden, 145 Wn.2d at 620. "The confrontation right and associated cross-examination are limited by general considerations of relevance." Darden, 145 Wn.2d at 620-21. "There is no right, constitutional or otherwise, to have irrelevant evidence admitted." Darden, 145 Wn.2d at 624.

We review the trial court's limitation of the scope of cross-examination for an abuse of discretion. Darden, 145 Wn.2d at 619. We also review evidentiary rulings for abuse of discretion. State v. Garcia, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). A trial court abuses its discretion if its decision is " 'manifestly unreasonable or based upon untenable grounds or reasons.' " Darden, 145 Wn.2d at 619 (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

During trial, the State asked Officer Wantland questions about how he estimates a vehicle's speed. During the cross-examination of Officer Wantland, the court

7

sustained the State's objection to the question about whether "you need a radar gun" to establish a civil traffic infraction.

> Q    . . . . I mean, if you're in court on a traffic ticket, you're trying to establish speed, you need a radar gun?
> [PROSECUTOR]:    Objection, relevance.
> [DEFENSE ATTORNEY]:    Counsel asked questions about how [Officer Wantland] estimates speed.
> THE COURT:    Sustain the objection to that question.

Maas contends by sustaining the objection, the trial court prevented him from questioning Officer Wantland about how he estimates speed. There is no dispute Officer Wantland did not take a radar reading of Maas's speed. Officer Wantland's testimony was "just an estimation" based on his visual observation of Maas's vehicle. Whether traffic courts use radar gun readings when adjudicating civil traffic infractions has no relation to Officer Wantland's credibility or his ability to estimate speed visually. Nothing prevented Maas from asking other questions about how Officer Wantland estimates speed. The trial court did not deny Maas the right to present a defense or abuse its discretion in sustaining the objection to the question about whether radar was necessary to prove speed in a traffic infraction on relevancy grounds.

We affirm the jury's verdict.

WE CONCUR:

8