**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84016-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DAVID LATHEN NIEUWENHUIS, | |
| Appellant. | |

FELDMAN, J. — A jury convicted David Nieuwenhuis of second-degree murder for the killing of Candice Black. Nieuwenhuis asserted at trial that Black attacked him while she was high on methamphetamine and heroin, she was "incredibly strong" and "overpowering," and he killed her in self-defense. The jury rejected that defense. Nieuwenhuis argues on appeal that he was denied the right to present a defense when the trial court excluded the testimony of his expert witness, Dr. Granville Storey, that the drugs in Black's system could lead to a "rush of adrenaline" or "extra strength." We disagree.

To determine whether Nieuwenhuis was denied the right to present a defense, we apply the two-part test from *State v. Jennings*, 199 Wn.2d 53, 502 P.3d 1255 (2022). The first part of this test requires us to determine whether the trial court abused its discretion when it excluded Dr. Storey's testimony. *Id.* at

57-58. Addressing this issue in *Jennings*, the court held that the trial court did not abuse its discretion by excluding under ER 403[1] a toxicology report showing the victim had methamphetamine in his system at the time of his death. *Id.* at 63. The court reasoned that because the defendant did not know how the methamphetamine was affecting the victim, and the defendant offered no witness to testify as to the potential effects of methamphetamine on the victim, "the toxicology report was speculative and might confuse the jury." *Id.* at 62-63.

In *State v. Lewis*, 141 Wn. App. 367, 166 P.3d 786 (2007), this court likewise held that the trial court did not abuse its discretion by excluding a medical examiner's testimony that methamphetamine can cause some users to experience "paranoia, irritability, or irrational behavior, and that some can become violent." *Id.* at 379 (internal quotation marks omitted). Similar to *Jennings*, the court reasoned that the medical examiner's testimony would not be helpful to the jury under ER 702[2] "[b]ecause of the wide range of effects of various quantities of methamphetamine on diverse individuals, and because [the medical examiner] had never observed [the victim] alive, with or without methamphetamine in his system, [the medical examiner] had no idea how the methamphetamine might have affected [the victim]." *Id.* at 389.

---

[1] ER 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[2] ER 702 states, "[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Nieuwenhuis argues that "[t]he circumstances here are the exact opposite of *Jennings* — Nieuwenhuis had an expert testify as to the potential effects on [Black]." To distinguish both *Jennings* and *Lewis*, Nieuwenhuis emphasizes Dr. Storey's testimony that Black had several risk factors that "are associated with an increased risk for some sort of irrational or violent behavior." While Dr. Storey was able to identify these potential risk factors, he repeatedly conceded that he could not say whether Black acted more aggressively while on methamphetamine. Dr. Storey was asked, "Can you say whether or not Ms. Black acted violently because of methamphetamine consumption at the time of her death?" Dr. Storey answered: "There's no scientific evidence that would— to a direct cause. It could be correlatory but not a direct cause." Dr. Storey ultimately agreed with the prosecution that he could not "say what effects of methamphetamine, if any, Ms. Black was exhibiting at the time of her death."

Dr. Storey's written report also conceded these issues. There, Dr. Storey conceded that "[i]t is impossible to know exactly how this combination [of methamphetamine and heroin] was affecting Ms. Black." He stated that "[i]t would be important to know if her baseline behavior exhibited paranoid thoughts, ill-tempered mood swings, or more aggressive behavior when high," but he conceded that he never personally observed Black's baseline behavior off methamphetamine or Black's behavior on methamphetamine. On this record, the trial court did not abuse its discretion when it excluded Dr. Storey's testimony under ER 403 and ER 702 in accordance with both *Jennings* and *Lewis*.

Having concluded that the trial court did not abuse its discretion when it excluded Dr. Storey's testimony, we turn to the second part of the *Jennings* test, which requires us to apply the balancing test from *State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983). Under *Hudlow*, we "balance[] the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence." *Id.* at 16. Here, Dr. Storey's testimony has little if any probative value whereas the state has a substantial interest in limiting the prejudicial effects of Dr. Storey's testimony. Similar to *Jennings* and *Lewis*, if Dr. Storey was able to testify about the *general* effects of methamphetamine and heroin, the jury would have been left to speculate as to whether the methamphetamine and heroin in *Black's* system caused *Black* to be "incredibly strong" and "overpower[]" Nieuwenhuis as he claimed at trial.

Our recent opinion in *State v. Ritchie*, 24 Wn. App. 2d 618, 520 P.3d 1105 (2022), is also instructive here. We explained in *Ritchie* that the "pertinent concern" when evaluating a defendant's right to present a defense is "whether both parties receive a fair trial." *Id*. at 634 (citing *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). We noted that this concern "is heightened when a new or antiquated rule appears to threaten the defendant's right to a fair trial." *Id*. But when the rule being applied is a "well-established, commonly utilized rule that has been applied time and again without any demonstrated detriment to the fairness of proceedings," the concern is not paramount. *Id*. We also held that "'[t]he ability of the defendant to achieve through other means the effect that the excluded examination allegedly would have produced is a factor indicating that

4

[the defendant's] right to'" present a defense is not violated. *Id.* at 635 (quoting *United States v. Drapeau*, 414 F.3d 869, 875 (8th Cir. 2005)).

Similar to *Ritchie*, the trial court in this case excluded Dr. Storey's testimony under ER 403 and 702. These are "well-established, commonly utilized rule[s] that ha[ve] been applied time and again without any demonstrated detriment to the fairness of proceedings." *Id.* at 634-35. Also, contrary to Nieuwenhuis' argument, he had other means to show that he was in a fight for his life and killed Black in self-defense. The jury heard lengthy recordings of Niewenhuis' detailed statements to the police shortly after Niewenhuis killed Black. In the recordings, Nieuwenhuis explained that when Black arrived at his home, he threatened to tell police that she was dealing drugs, and that Black "all of a sudden hit [Nieuwenhuis] with [her] iPad." And after she hit him with the iPad, Black hit Nieuwenhuis with her hands in the "[c]hest area" and "[t]owards [the] throat." Nieuwenhuis explained: "I was trying to get her off of me. She's just incredibly strong. She's not that big, I couldn't get her off me." And finally, he stated that "I was fighting for, I thought was my life."

Nieuwenhuis also presented evidence showing that Black's DNA was found on the handle of the murder weapon. Nieuwenhuis' attorney pointed to this evidence in closing argument to bolster Nieuwenhuis' defense that he was "in the fight for his life." Further, Nieuwenhuis presented as evidence a text message that he sent his mother immediately following the killing stating: "She attacked me. Hit me in the head with her iPad. I could not get her off me. I had to grab my stick from behind the door." Because Nieuwenhuis was able to

support his self-defense argument in all of these ways, "the evidence excluded was not highly probative evidence, the exclusion of which could give rise to a constitutional violation. Rather, the trial court's ruling was nothing more than a standard application of ER 403." *Ritchie*, 24 Wn. App. 2d at 638. We therefore hold, as we did in *Ritchie*, that "[t]he trial court's evidentiary ruling did not violate [Nieuwenhuis'] rights under ER 403, the Sixth Amendment, or article I, section 22." *Id*.[3]

We affirm.

Feldman, J.

WE CONCUR:

Birk, J.

Chung, J.

---

[3] Nieuwenhuis also argued in his opening brief that that the trial court erred in calculating his offender score, but he abandoned this argument his reply brief. We accept this concession and conclude that the trial court correctly calculated his offender score.