[No. 8348–9–III.   Division Three.   June 20, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE H. BARNES, JR., *Appellant.*

THOMPSON, C.J., dissents by separate opinion.

*Steven Aycock,* for appellant (appointed counsel for appeal).

*Dennis DeFelice, Prosecuting Attorney,* and *Steven Lowe, Deputy,* for respondent.

SHIELDS, J.—Willie Barnes appeals his conviction on two counts of unlawful delivery of a controlled substance, RCW 69.50.401(a)(1)(i). He claims he was unconstitutionally denied the right to confront a witness and the trial court improperly instructed the jury on the effects of his decision not to testify. We affirm.

On September 8, 1986, police officers conducted a controlled buy of cocaine in Pasco. A similar operation on September 22 yielded heroin. The buyer on both occasions was Dale Redmond, a police informant who at trial identified Mr. Barnes as the seller. Police officers confirmed some details of the operations, but Mr. Redmond, as purchaser, was the only witness who linked Mr. Barnes directly to the sales.

Before trial, Mr. Barnes' attorney stated his intent to impeach Mr. Redmond with two undated and unsigned letters reputedly written by Mr. Redmond in 1971. The letters attempted to induce a witness against Mr. Redmond in an unrelated case to give false testimony, or withhold true testimony, and threatened death to the witness and his family. The prosecutor objected: he had no prior knowledge of any letters, their date was too remote, their relevancy was questionable, and the material was prejudicial. The trial court treated the statement of intent as a motion and denied it without stating a reason.

During redirect examination, the prosecutor asked Mr. Redmond if he knew the meaning of a witness' oath, and Mr. Redmond responded affirmatively. Prompted by the question and answer, Mr. Barnes' attorney again asked the court to allow him "to use the letter that he [Mr. Redmond] wrote in 1971 to impeach him about his belief in that oath." The prosecutor again objected on the ground of relevancy to the question of Mr. Redmond's understanding of the meaning of the oath. The court again denied the request, observing only that "on the basis of the time that's elapsed on the date of those letters . . . the prejudicial effect of those would outweigh the probative value."

On recross examination the defense established that Mr. Redmond was using drugs in September 1986 while participating in the controlled buys.[1] Mr. Barnes declined to testify, and presented no other evidence in his own behalf. Mr. Barnes' attorney focused exclusively on Mr. Redmond's credibility in closing argument. The jury returned a guilty verdict after 1½ days of deliberation.

Mr. Barnes now contends he was denied his right to confront the key witness against him. The sixth amendment to the United States Constitution and Const. art. 1, § 22 (amend. 10) grant criminal defendants the right to confront and cross–examine adverse witnesses, subject to the State's interest in seeing that the evidence is not so prejudicial as to disrupt the fairness of the factfinding process. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). A "compelling state interest" test has been adopted if a court ruling is challenged on grounds it unduly restricted the defendant's right to confrontation. If the evidence is characterized as being of "high probative value", there can be no state interest compelling enough to preclude its introduction. *Hudlow*, at 16 (citing *Davis v. Alaska*, 415 U.S.

---

[1] On cross examination it had also been established that Mr. Redmond was paid by police to participate in the controlled buys; that he was using these payments to buy drugs for his own use; that he was given deferred prosecution on a shoplifting charge; and that he had a prior conviction for forgery.

308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973)).

A compelling state interest here includes an assurance that witnesses who come forward with evidence of a crime will not be discouraged from testifying because a prior conviction or misconduct may be revealed. *State v. Martinez,* 38 Wn. App. 421, 424, 685 P.2d 650, *review denied,* 102 Wn.2d 1020 (1984). In *Martinez* the defendant attempted to impeach the victim with a mid–1960's felony conviction for passing bad checks. The court ruled the defendant's interest in the impeachment through use of the prior conviction was minimal because of other impeachment evidence already admitted. We find that argument to be persuasive here, as there was other evidence of a sufficient quantity before the jury to impeach Mr. Redmond.

The admission of the letters was a matter of discretion by the trial court and will not be disturbed here absent abuse. *State v. York,* 28 Wn. App. 33, 36, 621 P.2d 784 (1980). In *York,* the trial court allowed the State to elicit the employment history of the only witness against the defendant. The defense sought to elicit, on cross examination, that the witness had been fired from a job because of irregularities in his paperwork and his general unsuitability for the job. This court reversed the trial court's order in limine, stating the defendant had been precluded from any cross examination of the witness' credibility, which was critical to the defendant's case. *York,* at 37. That case is distinguished from the facts here because the trial court allowed extensive cross examination of Mr. Redmond's past, including reference to his prior convictions and personal drug use during the controlled buy.

The trial court rejected the letters on the basis of the time elapsed and the fact their prejudicial effect outweighed their probative value. The letters were admittedly written in 1971 and did not involve the parties or the facts before the court. Defense counsel did not have them marked for identification nor does the record reveal how he

intended to use them. If he intended to use them as extrinsic evidence attacking Mr. Redmond's credibility, such use would be improper under ER 608(b).[2] If defense counsel intended to use them as the subject matter of cross examination under ER 607 to impeach Mr. Redmond, one of two results were possible: (1) If Mr. Redmond affirmed that he had sent letters attempting to suborn perjury of a witness, use of the letters themselves would then have been unnecessary. (2) If Mr. Redmond had denied the attempt to suborn perjury, the inquiry would have been at an end because "[t]he cross–examiner must 'take the answer' of the witness and may not call a second witness to contradict the first witness." (Footnote omitted.) 5A K. Tegland, Wash. Prac., *Evidence* § 232(6), at 212 (3d ed. 1989), and cases cited. Authentication could only have been accomplished by calling a second witness. Additionally, no request was made to question Mr. Redmond concerning the subornation attempt, using the letters as the foundational justification for asking the question. *See* K. Tegland § 232(1), at 205.

█ Mr. Barnes also urges us to consider whether the letters themselves were properly excludable under ER 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

He asserts the letters are relevant under ER 402 and not excludable within the exercise of the court's discretion by application of one or more of the six safeguards identified in ER 403. He does this apparently because the trial court's stated reason for rejecting the use of the letters was that their probative value was substantially outweighed by the danger of unfair prejudice. There is no doubt that the unfair prejudice in this case must be focused on Mr.

---

[2]ER 608(b) provides, in part:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence."

Barnes. *State v. Allen,* 50 Wn. App. 412, 422 n.3, 749 P.2d 702, *review denied,* 110 Wn.2d 1024 (1988). It most surely is not applicable to the witness, nor to the State, nor to the truthfinding function itself. *Hudlow,* at 13. Thus, the stated reason for the court's rejection of the evidence is erroneous. But, this court may affirm on any correct legal basis. *Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 758, 709 P.2d 1200 (1985); *State v. Armstead,* 40 Wn. App. 448, 449–50, 698 P.2d 1102 (1985).[3] That correct basis includes the compelling state interest previously noted and proper exclusion under ER 608(b).

We note the defense was fully able to develop the issue of Mr. Redmond's credibility through the multiple questions concerning his use of drugs, payment for his services by the police, use of the payment to purchase drugs for himself, prior conviction of forgery and deferred prosecution for shoplifting charges. The length of time the jury deliberated before reaching its verdict of guilty suggests, when accompanied by the closing argument of defense counsel, a thorough examination of the issue of credibility before the verdict was reached. The use of other relevant evidence has been held to be a factor in limiting cross examination. *State v. Allen, supra* at 422; *Martinez,* at 424. Thus, we find no error.

In Mr. Barnes' second assignment of error, he contends the court incorrectly instructed the jury on the effect of his

---

[3]It is noted that Mr. Redmond pleaded guilty to a charge of bribery, not intimidating or tampering with a witness, on the basis of the 1971 letters. However, the conviction would not have been admissible because it was more than 10 years old. ER 609(b) provides:

> Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

decision not to testify. When requested, a court must instruct the jury not to draw an adverse inference from the defendant's failure to testify. *Carter v. Kentucky,* 450 U.S. 288, 300, 67 L. Ed. 2d 241, 101 S. Ct. 1112 (1981). Mr. Barnes requested the following instruction:

The Defendant is not compelled to testify, and the fact that the Defendant has not testified cannot be used to infer guilt nor to prejudice him in anyway [*sic*].

The court instead instructed the jury in accord with 11 Wash. Prac., *WPIC* 6.31 (Supp. 1986):

The Defendant is not compelled to testify, and the fact that the Defendant has not testified cannot be used to infer guilt and should not prejudice him in anyway [*sic*].

The court's instruction is essentially the same as the one requested in *Carter,* 450 U.S. at 294. The issue in *Carter* was not the wording of the instruction itself, but whether the defendant was entitled to a "no inference" instruction on request.

■ Mr. Barnes' objection to the court's instruction is that the words "should not" are essentially permissive; the jury thus could have interpreted Mr. Barnes' refusal to testify as supportive of Mr. Redmond's credibility. He relies on *United States v. Eiland,* 741 F.2d 738 (5th Cir. 1984), which held the trial court's refusal to give a "no inference" instruction was not harmless error. Here, by contrast, the court gave a "no inference" instruction. The issue is whether the words "should not" misled the jury, as Mr. Barnes contends. We are not convinced the jury could have been misled by the instruction in any way as to Mr. Redmond's testimony. The instruction properly reflects the admonition "that a defendant must pay no court–imposed price for the exercise of his constitutional privilege not to testify." *Carter,* 450 U.S. at 301; *see Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, *reh'g denied,* 381 U.S. 957, 14 L. Ed. 2d 730, 85 S. Ct. 1797 (1965). Indeed, the auxiliary verb "should" expresses an obligation or necessity that a defendant not be prejudiced by deciding

not to testify. *State v. La Porte,* 58 Wn.2d 816, 823, 365 P.2d 24 (1961).

The judgment is affirmed.

MUNSON, J., concurs.

THOMPSON, C.J. (dissenting)—I respectfully dissent. The State's case rested on the believability of its key witness, a paid informant who had blatantly threatened another witness in the past.

Dale Redmond openly testified of his relationship with Pasco police. He had an "understanding" he would receive $50 every time he made a "buy". In this case, he was paid $50 after both transactions, and he admitted he used at least part of that money to purchase illegal drugs. He also admitted it was possible his testimony had some effect on the decision to defer prosecution of a shoplifting charge. The majority concludes this paid informant may not have testified if the defense had been allowed to question him about his attempt to suborn perjury 16 years earlier. I cannot agree.

The majority initially recognizes that a decision to limit cross examination must take into account the potential impact on the defendant's right of confrontation under the sixth amendment to the United States Constitution and Const. art. 1, § 22 (amend. 10). *Davis v. Alaska,* 415 U.S. 308, 315, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *State v. Hudlow,* 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

Our Supreme Court has adopted a "compelling state interest" requirement to balance the right to present evidence with the State's interest in limiting the prejudicial effects of the evidence. *Hudlow,* at 16. Under this test, if the evidence is relevant, the State must have a compelling interest in limiting any potential prejudicial effect. *Hudlow,* at 16. The focus should be on the potential prejudice to the "truthfinding process", and the evidence should not "confuse the issues, mislead the jury, or cause the jury to decide

the case on an improper or emotional basis". *Hudlow,* at 13–14.

In applying this test, the first step is to determine the probative value of the evidence. When the State's case rests solely on the testimony of one witness, that witness' credibility is especially relevant, and "a criminal defendant is given extra latitude in cross–examination to show motive or credibility . . ." *State v. York,* 28 Wn. App. 33, 35–36, 621 P.2d 784 (1980); *see State v. Roberts,* 25 Wn. App. 830, 834, 611 P.2d 1297 (1980); *State v. Tate,* 2 Wn. App. 241, 247, 469 P.2d 999 (1970). Here, Mr. Redmond was the only witness to testify Mr. Barnes sold drugs, and both parties recognized the paid informant's credibility was a critical question for the jury. The letters obviously reflect on Mr. Redmond's credibility and are not merely cumulative evidence. They go beyond his prior criminal involvement to demonstrate his fundamental lack of respect for the truthfinding process.

Relevance is enhanced by Mr. Redmond's response to the prosecutor's question regarding the importance of the oath. When the witness stated he knew he could be charged with perjury for lying, he left the jury with the inference he took his oath seriously. The question was particularly unfair, considering the prosecutor's obvious awareness of the letters and the court's pretrial ruling. The State opened the door to rebuttal on cross examination by raising the subject of the importance of the witness' oath. *State v. York, supra* at 37; *see generally* 5 K. Tegland, Wash. Prac., *Evidence* § 11(3), at 41–48 (3d ed. 1989).

As the trial court recognized, passage of time vitiates the probative value of evidence of prior bad acts. *See* 5A K. Tegland § 237(2), at 243 (interpreting the 10–year time limit of ER 609(b)). However, in balancing a defendant's right of confrontation, any per se time limit is inappropriate. *See People v. Redmon,* 112 Mich. App. 246, 315 N.W.2d 909 (1982), *quoted with approval in Hudlow,* at 15–16. Here, the letters are highly relevant to the issue of Mr. Redmond's credibility, despite the passage of time.

The next step under the *Hudlow* analysis is to determine whether the State had a compelling interest in limiting the prejudicial effects of the evidence. The State has not identified any prejudice to the truthfinding process, nor is any apparent. The witness is not the defendant, so there is no risk the evidence will prejudice jurors against Mr. Barnes. *See* 3 J. Weinstein & M. Berger, *Evidence* § 608[05], at 608–50 to 608–51 (1988). There is no state interest in affording special protection to the witness, as in the case of the rape shield statute, RCW 9A.44.020(3). *See Hudlow,* at 18.

The majority concludes the State has a compelling interest in ensuring that "witnesses . . . will not be discouraged from testifying because a prior conviction or misconduct may be revealed". Majority, at 539. The majority relies on *State v. Martinez,* 38 Wn. App. 421, 424, 685 P.2d 650, *review denied,* 102 Wn.2d 1020 (1984), which is inapplicable here. There, the State had presented testimony of another critical witness, "diminishing the importance of the victim's credibility to a determination of this case". *Martinez,* at 424. In this case, by contrast, Mr. Redmond was the single critical witness against Mr. Barnes. More importantly, the witness in *Martinez* was the *victim* of the assault, not a *paid informant* as in this case. Motivated as Mr. Redmond was by cash and drugs, and possibly by favorable treatment by the prosecutor, the majority's assumption he would have been discouraged from testifying by the prospect of revelation of his past misdeeds is not persuasive. I find it more likely that Mr. Redmond viewed his testimony as a prerequisite for future employment.

The only apparent prejudice in the use of this evidence is to the State's case. The sole inference that could have been created by the letters was that Mr. Redmond was not telling the truth—the very purpose for impeachment evidence. I would hold that the court's refusal to allow defense counsel to use the letters in cross examination of Mr. Redmond violated Mr. Barnes' right of confrontation under the Sixth Amendment and Const. art. 1, § 22 (amend. 10).

The majority implies the jurors would have reached the same verdict even if they had known of the letters since Mr. Redmond was adequately impeached with other evidence. A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same verdict without the error. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). There is a fundamental difference between the letters and the other impeachment evidence. The other evidence clearly "charred [Mr. Redmond's] integrity", as the State contends, by impugning his general character for truthfulness and by demonstrating a motive for testifying. The letters go beyond this initial impeachment and graphically demonstrate Mr. Redmond's disdain for judicial proceedings and a willingness to undermine the process by suborning perjury. Taking an oath is the first prerequisite to witness competence. Its purpose is to impress upon the witness the importance of telling the truth. ER 603; *Nirk v. Kent Civil Serv. Comm'n,* 30 Wn. App. 214, 218, 633 P.2d 118, *review denied,* 96 Wn.2d 1023 (1981); 5A K. Tegland § 220, at 160–61; 6 J. Wigmore, *Evidence* § 1827 (1976). A person's willingness to encourage violation of this oath is of significant impeachment value. Considering the jurors' uncertainty demonstrated by 1½ days of deliberations on a factually simple case, it is impossible to state, beyond a reasonable doubt, that the error was not prejudicial. *See State v. York, supra* at 37. The error was not harmless, and the conviction should be reversed.

The majority comments on defense counsel's failure to ask Mr. Redmond about the letters, to have them marked for identification, or to authenticate them. The record does not reveal how counsel intended to use the letters, but it does show the trial court ruled they could not be used for any reason in cross–examining Mr. Redmond. In view of this clear pretrial ruling, an attempt by counsel to refer to the letters would have been a useless act, and it undoubtedly would have incurred the court's wrath. Although

defense counsel was not given the opportunity to authenticate the letters, I note they are contained in a certified Franklin County court record related to revocation of Mr. Redmond's probation.[4] They thus could have been authenticated without calling another witness. *See* RCW 5.44.010; CR 44(a)(1); ER 901.

I also disagree with the majority's reliance on ER 608(b). The rule provides:

> **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The majority concludes that if Mr. Redmond had denied sending the letters, counsel would have been required to "take the answer" of the witness and would not have been allowed to call another witness to contradict him. *See* 5A K. Tegland § 232, at 212. The question here is not whether Mr. Barnes was entitled to call another witness, but whether he should have been allowed to use the letters *themselves* to impeach Mr. Redmond.

> An unsettled question is whether the provision excluding extrinsic evidence of prior conduct bars only the testimony of a second witness, or whether it also bars the use of documentary evidence to contradict the witness during cross-examination. Some courts have seemingly read the rule as barring the use of documentary evidence on cross-examination, while others follow the prerule view that the document would be considered "extrinsic" only if the laying of a proper foundation for its admission would involve the calling of additional witnesses.

---

[4] According to the prosecutor's recommendation in that 1972 proceeding, Mr. Redmond pleaded guilty to a charge of bribery for authoring the threatening letters. The prosecutor's statement indicated the FBI had found Mr. Redmond's fingerprints on one of the letters, Mr. Redmond had access to the typewriter believed to have been used to write one of the letters, and Mr. Redmond had made statements that he intended to or had written threatening letters.

(Footnotes omitted.) 5A K. Tegland § 232, at 215–16. This unsettled issue was not briefed or argued in this appeal.

Even if the letters were inadmissible under ER 608(b), they still may have been admissible to contradict Mr. Redmond if he denied sending them.

> The Rule 608(b) requirement that "the examiner must take his answer" does not prevent extrinsic evidence from being admitted to attack the witness' credibility on some theory other than impeachment by prior misconduct. Counsel and courts sometimes have difficulty in distinguishing between Rule 608 impeachment and impeachment by contradiction. The troublesome kind of case has arisen when the witness—usually the defendant—makes a claim on direct examination inconsistent with bad conduct. Extrinsic evidence may not be admitted pursuant to Rule 608 to rebut this claim. Whether extrinsic evidence may be admitted on a theory of impeachment by contradiction would depend on the circumstances of the case.

3 J. Weinstein & M. Berger § 608[05], at 608–31 to 608–33. The court's ruling denied Mr. Barnes his constitutional right to confront the key witness against him. I would reverse and remand for a new trial allowing the jury to view Mr. Redmond's testimony in its proper context.

Review denied at 113 Wn.2d 1018 (1989).