# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68735-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| SAMSON ASNAKEW HAILEMARIAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  September 23, 2013 |
| | ) | |

Lau, J. — Samson Hailemarian appeals his second degree robbery conviction. He argues that the trial court erred by precluding him from impeaching an adverse witness with evidence of an alleged threat the witness made.  Because the evidence was neither relevant nor admissible under ER 608(b), we affirm.

## FACTS

Witnesses testified to the following facts:  On November 4, 2011, 16-year-old Romulus Saunders was walking to a relative's house to get a haircut.  Saunders noticed Samson Hailemarian about 20 feet away, riding a bike toward him.  Saunders knew

Hailemarian from the neighborhood, but the two were not friends. Hailemarian approached Saunders, got off his bike, and asked Saunders what he was doing. Saunders responded that he was minding his own business and tried to walk past Hailemarian. Hailemarian said, "Stop right there." Report of Proceedings (RP) (Mar. 28, 2012) at 27.

Hailemarian then asked Saunders about the iPhone he was listening to and said, "Let me see it." RP (Mar. 28, 2012) at 27-28. Saunders refused, and Hailemarian said, "No, you're going to let me see your iPhone." RP (Mar. 28, 2012) at 28. Saunders and Hailemarian exchanged a few more words and Saunders tried to walk away. Hailemarian grabbed Saunders, forced him into a covered walkway near a building, and pushed him up against a wall. Hailemarian told Saunders, "I'm going to blast you," which Saunders understood as street slang for "I'm going to shoot you." RP (Mar. 28, 2012) at 30-31. Hailemarian took Saunders's hat and iPhone. Saunders chose not to fight to retain his property because he believed Hailemarian had a weapon and he feared for his safety.

Unknown to Saunders or Hailemarian, Seattle Police Officer Al Chapackdee was teaching a community outreach class next door and heard the disturbance. Officer Chapackdee was not in uniform, so he called his precinct and asked for assistance. Seattle Police Officer Jarrod Stone responded to Officer Chapackdee's call. The officers approached Hailemarian and Saunders. Both officers saw Hailemarian pushing Saunders up against a wall and yelling at him. According to Officer Stone, Saunders was on his toes and his eyes were wide open as if he was in shock. Officer Stone

heard Hailemarian yell aggressively at Saunders, "Bitch, nigga, I'll fuck you up." RP (Mar. 28, 2012) at 11.

Officer Stone yelled at Hailemarian in an attempt to distract him. Hailemarian turned and looked at Officer Stone with a "deer-in-the-headlights" look. RP (March 28, 2012) at 11. Officers Stone and Chapackdee separated Hailemarian and Saunders.

Hailemarian told Officer Stone that Saunders had disrespected him and that Hailemarian was standing up for himself. Meanwhile, Officer Chapackdee spoke with Saunders about the incident. Officer Stone also spoke with Saunders and described Saunders as scared and shaking.

Saunders told the officers that Hailemarian still had his iPhone. At that time, Hailemarian pulled the phone out of his pocket, said "here it is," and handed it to Officer Stone. RP (March 28, 2012) at 14. After Officer Stone confirmed that the phone belonged to Saunders, he arrested Hailemarian. Officers Chapackdee and Stone noticed another young man, Shane Robinson, nearby when they arrived, but he left the scene early in the investigation after refusing to give a statement.

The State charged Hailemarian with second degree robbery. Pretrial, defense counsel endorsed Robinson as a witness. Before the defense case at trial, the prosecutor interviewed Robinson. Robinson indicated that a couple of weeks after the robbery, Saunders told him that he was going to have his brother kill Hailemarian. The State moved to preclude this testimony.

Defense counsel argued that regardless of relevance, since Saunders denied ever threatening a witness in this case,[1] Hailemarian was entitled to impeach Saunders

---

[1] Saunders's cross-examination testimony on this issue was as follows:

-3-

with Robinson's testimony about Saunders's threat. The State responded that the evidence lacked relevance and constituted inadmissible hearsay. The trial court agreed and precluded the threat evidence.

Hailemarian testified at trial that he was waiting for a friend and walking toward the Union Gospel Community Center when he and Saunders bumped into each other. Hailemarian felt disrespected and demanded an apology. When neither party apologized, the interaction escalated into profanities and a physical altercation. Hailemarian testified that Saunders pulled out his phone and said, "I have friends coming to take care of this . . . ." RP (Mar. 29, 2012) at 55. Feeling threatened, Hailemarian tried to grab Saunders's phone to prevent him from calling his friends. The two wrestled over the phone. Hailemarian stated that each of them had the upper hand at various times but agreed that Saunders was up against the wall when the police arrived. Hailemarian admitted calling Saunders a "bitch" but denied threatening him. RP (Mar. 29, 2012) at 58-59. According to Hailemarian, when the police asked him about Saunders's phone, he showed them where it was and an officer picked it up off the ground.

Robinson testified that he saw about 20 seconds of pushing and shoving and described it as a roughly equal fight. He could not hear what Saunders and Hailemarian

---

"[Defense counsel]: And so it's your testimony you never tried to use a phone and call your friends?

"[Saunders]: Huh-uh.

"Q: You didn't threaten to call your friend so that they would come and take care of [Hailemarian]?

"A: No.

"Q: Okay. Now, Mr. Saunders, did you threaten any witnesses in this case?

"A: No."

RP (Mar. 28, 2012) at 44. The State did not object to this line of questioning.

said, did not know who was first to physically contact the other, and did not know how Hailemarian ended up with Saunders's iPhone. Robinson testified that the fight had cooled down by the time the officers arrived. According to Robinson, the officers "didn't really ask [him] anything" and never tried to get a statement from him. RP (Mar. 29, 2012) at 44-45. He wanted nothing to do with the situation and left as soon as the officers permitted him to leave.

The jury convicted Hailemarian of second degree robbery. The court sentenced him within the standard range. Hailemarian appeals.

## ANALYSIS

Hailemarian contends that the trial court erred in precluding him from impeaching Saunders with testimony regarding Saunders's alleged threat to have his brother kill Hailemarian. The State responds that the trial court properly exercised its discretion to preclude this impeachment evidence under ER 608(b).

The rights to present a defense and to confront and cross-examine adverse witnesses are guaranteed by both the federal and state constitutions. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; Wash. v. Texas, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); Davis v. Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). However, a criminal defendant has no constitutional right to present irrelevant or otherwise inadmissible evidence in his or her defense. Hudlow, 99 Wn.2d at 15; State v. Clark, 78 Wn. App. 471, 477, 898 P.2d 854 (1995). And the right to cross-examine witnesses is not absolute. State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The confrontation right is subject to the following limitations: (1) the evidence sought must be

relevant[2] and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial as to disrupt the fairness of the trial. Hudlow, 99 Wn.2d at 15.

Under ER 607, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Under ER 608(b), a party may introduce "[s]pecific instances of the conduct of a witness," other than conviction of a crime, and only "for the purpose of attacking or supporting the witness' credibility . . . ." The conduct may not be proved by extrinsic evidence. ER 608(b). The proponent may, however, cross-examine the witness about the conduct if the inquiry is probative of the witness's character for truthfulness or untruthfulness and the court exercises its discretion to allow the questioning. ER 608(b); see also State v. Gregory, 158 Wn.2d 759, 798, 147 P.3d 1201 (2006) ("In exercising its discretion, the trial court may consider whether the instance of the witness's misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial.").

ER 608(b) allows inquiry into specific instances only when those instances demonstrate a general disposition for truthfulness or untruthfulness. It is well established in Washington that "not every instance of a witness's (even a key witness's) misconduct is probative of a witness's truthfulness or untruthfulness under ER 608(b)." State v. O'Connor, 155 Wn.2d 335, 350, 119 P.3d 806 (2005). The rule generally does not allow inquiry about acts of violence, drug use, unusual personal habits, or the like.

---

[2] "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401.

See State v. Cochran, 102 Wn. App. 480, 486-87, 8 P.3d 313 (2000) (no inquiry allowed into witness's alleged abuse of a young child); State v. Stockton, 91 Wn. App. 35, 39-42, 955 P.2d 805 (1998) (no inquiry allowed into the fact that the witness had possessed and used drugs).

Evidentiary determinations lie largely within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. State v. Embry, 171 Wn. App. 714, 737, 287 P.3d 648 (2012). "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." Embry, 171 Wn. App. at 737.

As discussed above, Hailemarian argued at trial that regardless of the threat's relevance, Saunders denied threatening any witness in the case and, thus, the defense was "entitled to impeach Mr. Saunders's statement." RP (Mar. 29, 2012) at 27. When the trial court asked defense counsel to explain the evidence's relevance, counsel argued it was admissible regardless of relevance.[3] The trial court concluded the evidence was not relevant to Saunders's credibility. In response, defense counsel argued that Saunders "presented himself as somebody who was just a passive victim here, he did not have, basically, an aggressive bone in his body, he was victimized by this person, and yet here he is concocting crimes." RP (Mar. 29, 2012) at 30. The trial court reiterated that the evidence was not relevant to Saunders's credibility and was improper impeachment evidence.

---

[3] Defense counsel claimed that the State's failure to object opened the door to impeach Saunders's testimony with the threat evidence. "That's the whole idea of opening the door. So even if something is not relevant, once you open the door, it's here whether it's relevant or not." The court responded, "I don't necessarily agree with that. I think that if something's not relevant, there really is in my mind a question of whether or not there's even a door to be opened." RP (Mar. 29, 2012) at 28.

We conclude the trial court properly precluded the impeachment testimony regarding Saunders's alleged statement to Richardson. During Saunders's cross-examination, defense counsel asked if he had threatened any witnesses in the case. Saunders denied doing so. The inquiry ends there under ER 607. See State v. Barnes, 54 Wn. App. 536, 774 P.2d 547 (1989) (if inquiry under ER 607 is permitted to impeach witness and the witness denies the prior conduct, "the inquiry [ends] because '[t]he cross-examiner must take the answer of the witness and may not call a second witness to contradict the first witness.'") (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 232(6), at 212 (3d ed. 1989)) (second alteration in original). Further, ER 608(b) precludes the defense from introducing extrinsic evidence to contradict Saunders's testimony. Robinson's proposed testimony concerned an alleged threat Saunders expressed to Robinson after Hailemarian robbed him. This testimony is not probative of Saunders's character for truthfulness or untruthfulness and is inadmissible under ER 608(b).

Even assuming the truth of Robinson's proffered testimony, the trial court properly determined it was not relevant. The proffered testimony does not rebut Saunders's testimony. Nothing in the record indicates that Saunders threatened any of the witnesses or actually conveyed a threat to Hailemarian. As the trial court noted, if Robinson's testimony had any relevance at all, it was evidence of a statement "consistent with someone who has been robbed" rather than an indication of Saunders's veracity on the stand. RP (Mar. 29, 2012) at 30. We find no abuse of discretion in precluding the proffered testimony.

-8-

Hailemarian also contends that the threat evidence is relevant and admissible because it tends to prove the defense's theory of the case. He argues, "The fact of Saunders' threat [to call his friends] during the fight is made far more probable by evidence that two weeks after this incident, Saunders made a very similar threat" and "Saunders' threatening behavior was an essential element of the defense theory that this was not a robbery but a fight caused by escalating perceptions of disrespect." Appellant's Br. at 10, 11. Hailemarian failed to raise this argument below, and we decline to consider it for the first time on appeal.[4] See State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988); RAP 2.5(a).

---

[4] Even if we address this argument, it lacks merit. Hailemarian relies on State v. Young, 48 Wn. App. 406, 410, 739 P.2d 1170 (1987), for his argument that evidence of Saunders's subsequent threat is relevant to the defense's theory that Hailemarian had no intent to steal Saunders's phone and was merely trying to prevent being outnumbered by Saunders's friends. In Young, the defendant was charged with vehicular homicide after a truck he was driving went out of control and left the roadway, killing two passengers. Young, 48 Wn. App. at 408. The defendant testified that during the incident, one of his passengers grabbed the steering wheel and caused him to crash. Young, 48 Wn. App. at 408. To support this argument, the defense sought to offer evidence that on four prior occasions, the same passenger had grabbed the wheel away from the driver. Young, 48 Wn. App. at 408-09. The trial court suppressed this evidence, finding it unfairly prejudicial under ER 403. Young, 48 Wn. App. at 409. Division Three of this court reversed based solely on ER 404(b), which allows evidence of other crimes, wrongs, or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Young, 48 Wn. App. at 412-13. The court deemed the evidence admissible to prove the identity of the person truly responsible for the accident, control of the vehicle, and proximate cause of the accident. Young, 48 Wn. App. at 413.

Young is inapplicable here. Unlike in Young, the alleged threat here occurred after the crime, not before. At most, the defense theory is that the alleged threat showed Saunders's propensity for violence. This kind of propensity evidence (1) lacks relevance as discussed above and (2) is barred by ER 404(b) and, thus, is inadmissible even if the defense had raised this argument below. See ER 404; State v. Gresham, 173 Wn.2d 405, 420-21, 269 P.3d 207 (2012) (ER 404(b) is "categorical bar" to admission of evidence to prove person's character or show he acted in conformance with that character.).

## CONCLUSION

The trial court acted well within its discretion in precluding the proffered testimony regarding Saunders's alleged threat to have his brother kill Hailemarian. We affirm.

WE CONCUR: