FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT -1 AM 9: 42



IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76568-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VAUGHN BRASWELL, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 1, 2018 |

ANDRUS, J. — Vaughn Braswell was convicted of multiple domestic violence offenses following a trial at which his girlfriend, Marisela Sanchez, testified. Braswell challenges his convictions, arguing that the trial court denied him the right to confront Sanchez on cross-examination by excluding his bank records. Braswell asserts that these records were crucial to impeaching Sanchez's credibility by demonstrating Sanchez had used money in Braswell's account to pay personal debts while he was incarcerated. We affirm because the trial court did not abuse its discretion in excluding the records under the circumstances of this case.

## FACTS

The State charged Braswell with one count of intimidating a witness, one count of felony harassment, one count of second degree assault, three counts of violating a court order, and one count of animal cruelty in the second degree.

These charges arose out of Braswell's relationship with Sanchez over the course of approximately nine months in 2015 and 2016.

Braswell and Sanchez first met through social media in October 2014 when he was living in North Carolina and Sanchez was living in West Seattle. They met in person when Sanchez flew to North Carolina for a visit in January 2015. The visit went well and after Sanchez flew home, they began to talk on the phone daily. Braswell traveled to Seattle for weekend visits in both March and April 2015. During the April visit, Braswell became angry and choked Sanchez. Braswell was very apologetic after the incident and explained to Sanchez that he had anger problems.

By August 2015, Braswell and Sanchez began to argue about the length of time he was spending in her house. He missed a flight home, returned to Sanchez's house, and wanted to stay there. Sanchez was uncomfortable with Braswell staying longer because her roommates would become upset. Braswell refused to leave the house, which led to an argument. The argument became heated and things "got physical." Braswell came towards Sanchez with his hands up as if to choke her. She fell against a tall wall mirror, shattering it. Sanchez called the police and asked them to remove Braswell from her home.

The couple reconciled after Braswell returned to North Carolina that September. Around the same time, Braswell began sending Sanchez messages over Snapchat to the effect that he would not let her be with anyone else. In one message, he asked her if she thought he was kidding. Braswell sent her pictures

- 2 -

of bodies, cut up and bloody, with the message "this is what I'm gonna do to you" if Sanchez went out with anyone else.

Braswell visited Sanchez again in October 2015, after she had moved to Bellevue. One morning as Sanchez prepared for work, Braswell became angry, pressed her up against a wall, and choked her to the point where she could not breathe. The behavior was unprovoked and took Sanchez by surprise. She became scared of Braswell because his attitude was "like he had nothing to lose."

Around November 2015, Braswell began to direct his anger at Sanchez's dog, Bear. When Braswell and Sanchez argued, he would kick the dog. Braswell also began picking the dog up by its throat and dropping it.[1] Braswell told Sanchez that all she cared about "was that fuckin' dog." Sanchez never left Bear alone with Braswell.

On November 4, 2015, when Sanchez returned home from work, Braswell became angry at her unwillingness to talk. He kicked and punched her as she cowered on the floor. Braswell choked Sanchez, restricting her breathing.[2]

During a March 2016 fight, Braswell, angry at Sanchez for her unwillingness to give him access to her cell phone, began punching walls, choking Sanchez, and punching Bear. Sanchez called a friend who called the police. Braswell was arrested for malicious mischief and the court issued a no-contact order to protect Sanchez.

---

[1] Braswell's mistreatment of Bear formed the basis for the animal cruelty conviction (count seven).

[2] Braswell's conduct on November 4, 2015 formed the basis of the assault in the second degree (strangulation) conviction (count six).

In April 2016, Braswell violated the no-contact order by calling and texting Sanchez. One of his messages included threats to Sanchez's family. In June 2016, Braswell pleaded guilty to misdemeanor violation of a no-contact order arising out of this incident.

In May 2016, Braswell entered Sanchez's apartment at 2:30 in the morning, leading her to call the police. He once again was convicted of misdemeanor violation of a no-contact order. At the sentencing hearing for this conviction, the court entered a second no-contact order protecting Sanchez from Braswell. Braswell spent 45 days in jail for misdemeanor violation of a court order.

Shortly after his release from jail in mid-June 2016, Braswell sent Sanchez messages threatening to kill her for cooperating with police.[3] Pictures of Braswell's text messages and incoming calls on Sanchez's phone were admitted at trial. Sanchez once again contacted the police.

Between June 12 and June 22, Sanchez received numerous phone calls late at night. On June 17 and 18, she woke up when she received a phone call from an unknown number. Sanchez answered the call but hung up when she recognized Braswell's voice.[4] On June 22, she was awakened by someone banging on her door and mumbling something like "motherfucker." Sanchez

---

[3] The June 12, 2016 text messages formed the basis for the witness intimidation conviction (count one) and the felony harassment conviction (count two).

[4] The alleged June 17, 2016 telephone call formed the basis for the charge of violation of a no-contact order in count three. The jury acquitted Braswell of this charge.

recognized Braswell's voice but did not see him.[5] When the banging stopped, she called the police to report the contact.

Prior to trial, Braswell identified his bank records as potential evidence. Braswell's May - June 2016 bank statement for his Wells Fargo account showed a withdrawal of $648.30 on June 2 described as "ATT Payment 053116 690130004 Smt2E Marisela Sanchez." Exhibit (Ex.) 12 at 2. Under the heading of "Items returned unpaid," there are two entries, one dated June 13, described as "The Regent at Be Payment xxxxx4899 Marisela Sanchez," and one dated June 14, described as "Comcast Cable 160610 5759182 Marisela Sanchez." Ex. 12 at 3. The dates of these transactions fell during Braswell's incarceration for the misdemeanor violation of a no-contact order.

In a pretrial interview, Sanchez denied any knowledge of the transactions. Ex. 10 at 18-21. According to Sanchez, she allowed Braswell to stay at her apartment for an extended period of time and they had agreements for sharing various expenses. Ex. 10 at 18-21. Sanchez stated that Braswell wanted phone and internet accounts. Ex. 10 at 18-21. Since he had bad credit and could not open the accounts in his own name, Sanchez opened accounts in her name for Braswell. Ex. 10 at 19-20. Braswell set up online payments from his bank account to pay the phone and internet bills. Ex. 10 at 18-21. Sanchez stated that the $600 AT&T charge was most likely a bill for the cell phone he was using under her name. Ex. 10 at 19. Sanchez was able to identify "The Regent" as her former apartment

---

[5] The alleged June 22, 2016 incident formed the basis for the charge of violation of a no-contact order in count four. The jury acquitted Braswell of this charge.

complex but had no idea what the $63.19 unpaid item referred to. Ex. 10 at 21. Sanchez denied ever having access to Braswell's bank account. Ex. 10 at 20.

During opening statement, Braswell's counsel referred to the bank records, stating that the jury would hear evidence that Sanchez withdrew over $600 from Braswell's account. The trial court sustained the State's objection to this statement. Outside the presence of the jury, Braswell argued that the bank statement was admissible impeachment evidence. He asserted that the transactions reflected in the statement showed that Sanchez had accessed the account while Braswell was in jail, giving her a motive to lie.

The trial court excluded the bank records because the defense could not establish what the transactions were for, when they had occurred, or by whom they were authorized. The court concluded:

> [W]e don't know what the records mean . . . . There's no indication [Sanchez] had access to his account. There's no indication that she could possibly have done this. And you have records that there's no explanation of what those particular entries mean. Therefore, I'm ruling that it is speculative.
>
> If there was anything to support, other than the fact of her name appear[ing] somewhere for which there are many possible explanations, that she actually withdrew this money, it would be a different story. But there isn't. Because the documents are not interpreted by anybody who knows what they mean. And unless you've spoken to a bank representative about what those entries mean, my impression is that you also are speculating about what they mean.

The court allowed Braswell to ask Sanchez whether she had accessed his bank account but ruled that he could not introduce the bank records if she denied doing so.

During Sanchez's testimony, defense counsel again sought to admit the bank records as impeachment evidence, offering to have Braswell testify in an offer of proof as to what the records meant. The court rejected the offer, stating that, if Braswell testified for an offer of proof but chose not to testify in his own defense, the State would have no way to rebut his testimony. The court invited defense counsel to provide authority for the proposition that a defendant in a criminal case could take the stand to make an offer of proof. It also stated that had the defense offered someone from the bank to interpret the records at trial, the court's ruling may have been different.

On cross examination, defense counsel asked Sanchez if she withdrew money from Braswell's account to make an AT&T payment. Sanchez stated that she did not.

The jury acquitted Braswell of the two counts of violating a court order based on the instances when Sanchez believed she recognized his voice. The jury convicted Braswell of the other five charges. Braswell appeals.

## ANALYSIS

Braswell contends the trial court violated his right to confront Sanchez, a key prosecution witness, with impeachment evidence of bias and lack of truthfulness by precluding him from questioning Sanchez about entries in his bank records. We hold that the trial court did not abuse its discretion in limiting Braswell's proffered evidence or denying Braswell's motion for a mistrial based on the evidentiary decision.

The federal and state constitutions guarantee a criminal defendant the right to confront adverse witnesses. U.S. CONST. amend VI; CONST. art. I, § 22; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The right to confront witnesses includes the right to impeach a witness's credibility. Id. A defendant may impeach a witness's credibility through evidence of bias, that is, a relationship that may lead the witness to slant her testimony. See United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Bias evidence may be introduced through both cross examination and extrinsic evidence. Id. A criminal defendant has wide latitude in impeaching the credibility of a key prosecution witness. State v. York, 28 Wn. App. 33, 36, 621 P.2d 784 (1980).

But the right to confront witnesses through impeachment is not unlimited. The trial court has discretion to set boundaries on cross examination and extrinsic evidence of bias. State v. Fisher, 165 Wn.2d 727, 752-53, 202 P.3d 937 (2009). Such evidence may be excluded, in the trial court's discretion, when it is confusing, marginally relevant, remote, or speculative. Id.; see also Darden, 145 Wn.2d at 621 (citing ER 401 and ER 403 and stating that "[t]he confrontation right and associated cross-examination are limited by general considerations of relevance").

We review an alleged confrontation clause violation de novo. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). But we review a trial court's evidentiary decisions, including a limitation on the scope of cross-examination, for manifest abuse of discretion. Darden, 145 Wn.2d at 619. A manifest abuse of discretion occurs when the decision is manifestly unreasonable or based on untenable grounds. State v. Lile, 188 Wn.2d 766, 782, 398 P.3d 1052 (2017). To

affirm, we need not agree with the trial court's decision, we need only conclude that it was reasonable. Id. Where there is no manifest abuse of discretion, there is no error and we do not reach the claim of constitutional violation. State v. Blair, 3 Wn. App. 2d 343, 351, 415 P.3d 1232 (2018).

In this case, Braswell sought to introduce his bank records to impeach Sanchez. Whether Sanchez was using Braswell's money while he was incarcerated was a proper area of impeachment, as it was relevant to whether she had a motive to fabricate stories about the alleged domestic violence incidents. The trial court certainly could have admitted, and indicated a willingness to admit, extrinsic evidence of Sanchez actually using Braswell's bank accounts to access his money or to pay her personal debts. But the trial court reasonably concluded that the evidence proffered did not actually make this proposition more probable than not.

By themselves, the bank records showed only that three transactions associated with Sanchez's name had occurred. Two of the three transactions appeared to be entries indicating that payments to Comcast and to Sanchez's apartment complex had been returned as unpaid. The third transaction appeared to be a payment on an AT&T bill. The records did not establish who authorized the transactions. The fact that Sanchez's name was associated with the AT&T charge may have meant nothing other than that the charge was for a bill that Braswell had set up in Sanchez's name, as she indicated in her pretrial defense interview. Thus, the trial court did not abuse its discretion in concluding that the

entries in the records, by themselves, did not demonstrate that Sanchez was taking money from Braswell's bank accounts or using it to pay her own personal bills.

Nor could Braswell's testimony in an "offer of proof" resolve these deficiencies. Under ER 103, an "offer of proof" is a mechanism for placing on the record the substance of excluded evidence. An offer of proof is made outside the presence of the jury. ER 103(c). It is unclear if Braswell sought to take the stand to establish authenticity under ER 104(a) for purposes of an evidentiary ruling (outside the presence of the jury) or if he was proposing to explain to the jury what he believed the entries in the documents meant. The trial court explicitly asked defense counsel for some authority that would allow Braswell to take the stand to impeach Sanchez's credibility without exposing himself to cross examination by the State. There is nothing in the record to suggest that Braswell provided the requested authority to the trial court. The trial court also indicated that if the defense had called a bank employee to link Sanchez to the entries in the bank records, the evidentiary ruling might have been different. We can find nothing in the record to suggest that defense counsel sought permission to call a bank employee to testify. On this record, Braswell fails to show a manifest abuse of discretion.

Braswell also appears to argue that the bank statement was admissible to impeach Sanchez's trial testimony through a specific instance of conduct. Impeachment through specific instances of conduct is governed by ER 608(b), under which the trial court has discretion to allow cross-examination but not extrinsic evidence:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . .

ER 608(b). Under this rule, if a witness denies a specific instance of conduct on cross-examination, the inquiry is at an end. State v. Barnes, 54 Wn. App. 536, 540, 774 P.2d 547 (1989). In this case, the trial court properly allowed Braswell to ask Sanchez if she had accessed Braswell's bank account. Because Sanchez denied the specific instance of conduct, the inquiry was at an end.

Under the circumstances here, the trial court did not abuse its discretion in excluding the bank records. The trial court reasonably concluded that the records, by themselves, were not relevant and that Braswell's argument as to the records was speculative. Because there was no abuse of discretion, there was no error that amounted to a constitutional violation, and therefore, there were no grounds for the trial court to declare a mistrial.

Affirmed.

Andrus, J.

WE CONCUR:

Mann, ACJ

Becker, J.

- 11 -