# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 60267-9-II |
| SIDNEY S. HICKLIN, Jr., | |
| Petitioner. | UNPUBLISHED OPINION |
| . | |

VELJACIC, A.C.J. — A jury found Sidney S. Hicklin, Jr. guilty of rape in the second degree, assault in the second degree, felony harassment, and unlawful imprisonment. On direct appeal, we vacated the unlawful imprisonment conviction on double jeopardy grounds. *State v. Hicklin*, 26 Wn. App. 2d 177, 180, 527 P.3d 1183, *review granted in part*, 2 Wn.3d 1001 (2023). In this timely personal restraint petition (PRP), Hicklin argues that he is entitled to a new trial based on evidentiary error, constitutional error, and ineffective assistance of counsel. Because Hicklin does not show that he is entitled to collateral relief, we deny his PRP.

FACTS[1]

I.     BACKGROUND FACTS

On the evening of July 4, 2020, City of Port Angeles Police Officer Geraldine Smith was dispatched to a home. When she arrived, Smith contacted KH.[2] KH was crying and visibly upset.

---

[1] The following facts rely in part on the facts set forth in our opinion in *Hicklin*, 26 Wn. App. 2d at 180-82.

[2] We refer to the victim of a sexual assault by initials to protect their privacy.

KH told Smith that she went to Hicklin's home because he was a friend and she needed some support. KH left to get some beverages for them at the store and, when she returned, Hicklin got angry and upset. KH told Smith that Hicklin grabbed her by the throat and applied pressure to her neck multiple times. KH said she was afraid that Hicklin was going to kill her. KH also said that Hicklin raped her.

Smith brought KH to the police station for a formal interview. Smith also took photographs documenting redness on KH's neck and bruises on her thigh. Smith then took KH to the hospital for a sexual assault exam by a sexual assault nurse examiner (SANE).

The State charged Hicklin with rape in the second degree, assault in the second degree, felony harassment, and unlawful imprisonment.

II.     MOTION TO ALLOW EVIDENCE—RAPE SHIELD HEARING

Prior to trial, Hicklin filed a motion to allow evidence of KH's prior sexual history with him. Hicklin provided a written offer of proof to support his motion. The offer of proof asserted that Hicklin would testify that Hicklin became friends with KH while attending self-help meetings. Shortly after meeting, Hicklin and KH began having sex. On the night of the incident, Hicklin invited KH to his mother's house. Hicklin and KH had been naked in the hot tub at Hicklin's mother's house once before. When KH arrived at Hicklin's mother's house, they were both drinking and began kissing on the couch. When Hicklin wanted more alcohol, KH agreed to go get it. Hicklin stated that KH took his bank card to pay for beer, but KH never returned to the house.

During the offer of proof examination by defense counsel, Hicklin testified that he met KH about three years ago at self-help meetings in the recovery community. They started having sex

after their second meeting. KH had previously been naked with Hicklin in the hot tub at his mother's house and previously had sex with Hicklin.

Hicklin also testified that, on the night of the incident, he invited KH over to "get naked in the hot tub." 1 Rep. of Proc. (RP) at 41. When KH arrived, she had a half gallon bottle of vodka that was half empty. KH drank from the bottle while she was with Hicklin. Hicklin and KH started kissing "and hands kinda all over the place," but they did not have sex. 1 RP at 42. After about 15 minutes, Hicklin asked KH to go down the block to buy more alcohol because he was out of alcohol. KH took Hicklin's bank card to buy the alcohol and left. KH never came back.

The State argued that evidence of a past sexual relationship was not admissible because Hicklin was not alleging consent and was instead claiming that no intercourse occurred. The trial court agreed, stating, "there was no particular factual showing demonstrating even the slightest similarity between past consensual sexual activity and what's alleged here. I mean, I just don't think we have enough detail that goes to the issue of consent." 1 RP at 46. The court continued, "[h]is defense isn't consent." 1 RP at 51. The court permitted Hicklin to submit a brief, if he wanted, regarding the admissibility of the prior sexual relationship. Our record does not show a brief was submitted or that the issue was addressed further.

III. JURY TRIAL

At trial, KH testified that she knew Hicklin for about three years through the recovery community. And the two were friends. KH testified that they were at Hicklin's mother's hot tub before where they "put [their] feet up" and "talk[ed]." 1 RP at 338. KH testified she had on a bathing suit at that time.

KH testified that on July 4, she was arguing with her boyfriend, Ashley Messersmith. She then received a message from Hicklin about going in the hot tub at his mother's house while he

3

was housesitting. Hicklin sent a follow-up message that said, "naked," which KH deleted. 1 RP at 318. KH deleted the word "naked" because it was inappropriate and "not something friends do." 1 RP at321.

KH testified that prior to going to see Hicklin, she was drinking vodka. When KH arrived, she and Hicklin sat on the couch and talked. After a time, Hicklin asked KH to go buy more alcohol. Hicklin gave KH his bank card to pay for the alcohol. KH denied kissing Hicklin prior to leaving to buy more alcohol.

KH went to a store a block away to buy alcohol. After purchasing the alcohol with Hicklin's bank card, KH returned to Hicklin's mother's house. KH gave Hicklin the bag with the alcohol; she thought she had also put the bank card in the bag. When Hicklin realized the bank card was not in the bag, he became very angry. Hicklin began pacing and yelling at KH, asking where the bank card was.

KH testified that once Hicklin got angry about the bank card, everything happened very fast. KH was sitting on the couch, and Hicklin grabbed her around her neck. KH testified that Hicklin used his body weight on KH's legs, pushing them open. Then, Hicklin put his penis inside KH. KH was able to get away and call Messersmith. After Messersmith arrived, he called the police.

The forensic scientist who analyzed the samples collected by the SANE nurse also testified. She testified that no semen was detected on the vaginal swab, but deoxyribonucleic acid (DNA) from an unidentified source was present on the perineal swab. The swab was not tested to identify the male contributor because of the high female to male ratio.

Semen was detected on KH's pants. On further testing, Hicklin was excluded as a potential source of the DNA on the pants. But tests showed Hicklin was a contributor to the sample taken

from the right side of KH's neck. The forensic scientist could not tell if the DNA was from touch or saliva but testified that saliva is rich with DNA.

Hicklin testified in his own defense. He testified that he had known KH for a little over three years. On July 4, 2020, Hicklin messaged KH to see if she wanted to hang out. Hicklin invited KH to come over to his mother's house and use the hot tub. When she arrived, the two sat on the couch kissing for approximately 15 minutes.

Hicklin testified that he gave his bank card to KH to go to the store to buy more alcohol. KH never returned. Hicklin denied assaulting or raping KH.

During closing arguments, Hicklin argued that DNA was on KH's neck from Hicklin's "lips." 2 RP at 751.

The jury found Hicklin guilty as charged.

IV.    APPEAL AND PRP

Hicklin appealed, challenging, inter alia, the courtroom closure of the rape shield hearing. *Hicklin*, 26 Wn. App. at 179-80. We held that the rape shield hearing did not implicate Hicklin's public trial right. *Id.* at 180. We further held that Hicklin's unlawful imprisonment conviction violated double jeopardy and remanded for the trial court to vacate that conviction. *Id.* We affirmed the remaining convictions but remanded to strike a challenged community custody condition and the supervision fees. *Id.*

Hicklin petitioned the Washington State Supreme Court for review. The court granted the petition solely on the issue that the victim penalty assessment (VPA) and DNA fees should be reconsidered in light of 2023 statutory amendments to RCW 7.68.035 and RCW 43.43.7541. *State*

5

*v. Hicklin*, 2 Wn.3d 1001, 537 P.3d 1037 (2023). The Supreme Court mandated the matter on December 8, 2023.[3] Hicklin timely filed this petition on December 6, 2024.

ANALYSIS

Hicklin contends that the trial court abused its discretion by excluding evidence of his prior sexual relationship with KH, thereby violating his constitutional rights to present a defense and confront witnesses. Hicklin further alleges defense counsel rendered ineffective assistance of counsel related to this evidence. We disagree.

I.      PRP Legal Principles

Relief through a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before we will disturb an otherwise settled judgment. *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 324, 525 P.3d 156 (2023). To obtain collateral relief through a PRP, the petitioner must demonstrate both error and prejudice. *Id*. If the claimed error is of constitutional magnitude, the petitioner must show actual and substantial prejudice. *Id*. If the claimed error is not of constitutional magnitude, the petitioner must demonstrate that the error is a fundamental defect that inherently resulted in a complete miscarriage of justice. *Id*. The petitioner must state with particularity the factual allegations underlying his or her claim of unlawful restraint. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Bare assertions and conclusory allegations are not sufficient. *Id*. at 886.

Petitioners seeking relief through a PRP cannot merely renew "'an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). Relitigation may serve the interests of justice

---

[3] *See* Mandate, *State v. Hicklin*, No. 102207-7 (Wash. Dec. 8, 2023).

if there has been an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the appeal exists. *Yates*, 177 Wn.2d at 17. But petitioners cannot avoid this requirement "merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." *Davis*, 152 Wn.2d at 671. The petitioner must instead "raise new points of fact and law that were not or could not have been raised in" the prior action. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999).

We have three options when considering a PRP. First, if the petitioner does not show actual prejudice for constitutional errors or a fundamental defect resulting in a miscarriage of justice for nonconstitutional errors, we will dismiss or deny the PRP. *Yates*, 177 Wn.2d at 17-18; *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015). Second, if the petitioner has proved actual prejudice or a fundamental defect resulting in a miscarriage of justice, we will grant the PRP. *Yates*, 177 Wn.2d at 18. And third, if the petitioner makes at least a prima facie showing but the merits of their contentions cannot be resolved solely on the record, we will remand the matter to the trial court for a full hearing on the merits or a reference hearing. *Id*.

II.     PRIOR CHALLENGE TO THE TRIAL COURT'S RAPE SHIELD HEARING

As an initial matter, we note that Hicklin previously challenged the rape shield hearing in his direct appeal. *Hicklin*, 26 Wn. App. at 179-80. He now renews that challenge on new grounds, without explaining why these arguments were not raised earlier. Generally, such renewed challenges are not permitted. *Yates*, 177 Wn.2d at 17. Nevertheless, because Hicklin's prior challenge concerned the procedure of the hearing and he now contests its merits, we consider his arguments.

III.    EVIDENCE OF PRIOR SEXUAL RELATIONSHIP[4]

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). An abuse of discretion occurs when an evidentiary decision was manifestly unreasonable or based on untenable grounds or reasons. *Id*. The admissibility of past-sexual-behavior evidence is within the sound discretion of the trial court. *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983). "The exercise of discretion in balancing the danger of prejudice against the probative value of the evidence is also a matter within the trial court's discretion, and should be overturned only if no reasonable person could take the view adopted by the trial court." *Id.* at 18. In the PRP context, a petitioner must also show the exclusion of the evidence was a fundamental defect that amounts to a complete miscarriage of justice. *Hinton*, 1 Wn.3d at 324.

The rape shield statute, RCW 9A.44.020(2), states that evidence of a victim's past sexual behavior is inadmissible on the issue of credibility or to prove the victim's consent. However, when "the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible *on the issue of consent to the offense*." *Id.* (emphasis added).

Additionally, even where evidence might be prohibited by the rape shield statute, the Sixth Amendment to the United States Constitution precludes the statute from being used to bar evidence of "extremely high probative value." *See State v. Jones*, 168 Wn.2d 713, 723, 230 P.3d 576 (2010).

---

[4] Hicklin provides a preemptive argument in his opening brief that he preserved his allegation of evidentiary error, or in the alternative defense counsel rendered deficient performance for not preserving the error. We find that the issue was preserved based on Hicklin's motion to allow evidence and the trial court's subsequent ruling and decline to address this issue further.

Evidence that tends to establish the defendant's theory of the case or disproves the State's case is generally relevant and admissible despite the rape shield statute. *State v. Sheets*, 128 Wn. App. 149, 156, 115 P.3d 1004 (2005). In addition, evidence regarding the victim's past sexual history may be admissible to impeach the victim based on inconsistent statements. *State v. Bartch*, 28 Wn. App. 2d 564, 579-80, 537 P.3d 1091 (2023), *review denied*, 2 Wn.3d 1026 (2024). Conversely, there is no constitutional problem with barring irrelevant evidence under the rape shield statute. *Hudlow*, 99 Wn.2d at 16.

A. No Nonconstitutional Error

Hicklin provided an offer of proof that he became friends with KH while attending self-help meetings and that their relationship became sexual. He also alleged they had been naked in a hot tub before. While this evidence could be probative of consent, consent was immaterial because Hicklin was arguing in his defense that sexual intercourse did not occur.[5] Indeed, the State argued that evidence of a past sexual relationship was not admissible because Hicklin was not alleging consent and was instead claiming that no intercourse occurred. The trial court agreed, stating, "there was no particular factual showing demonstrating even the slightest similarity between past consensual sexual activity and what's alleged here. I mean, I just don't think we have enough detail that goes to the issue of consent." 1 RP at 46. Additionally, Hicklin testified that he invited KH to come over to his mother's house and use the hot tub and that when she arrived, the two sat on the couch kissing for approximately 15 minutes. This evidence explained why there was DNA on KH's neck.

Based on the above, evidence of a prior sexual relationship would be irrelevant and barred by the rape shield statute. This is because the evidence does not tend to establish Hicklin's theory

---

[5] To be sure, Hicklin *could* have argued inconsistent defenses, but he did not.

of the case or disprove the State's case is general to overcome the rape shield statute. *See Sheets*, 128 Wn. App. at 156. Moreover, Hicklin was able to explain the DNA on KH's neck—evidence of prior sexual history would not be needed to make that showing. Therefore, tenable grounds exist for the trial court to deny Hicklin's motion to allow evidence of prior sexual activity. Hicklin does not show an abuse of discretion or a fundamental defect resulting in a complete miscarriage of justice. Accordingly, Hicklin does not establish nonconstitutional error to obtain collateral relief through a PRP.

B.      No Violation of Constitutional Right to Present a Defense

Both the Sixth Amendment to the United States Constitution and article I, section 22, of the Washington Constitution guarantee a defendant's right to present a defense. *State v. Jennings*, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022). The Supreme Court has developed a two-step process when addressing evidentiary rulings and the right to present a defense. *Id*. at 58.

First, we review the trial court's rulings for an abuse of discretion. *Id*. "Trial courts determine whether evidence is relevant and admissible." *Id*. at 59.

Second, if we conclude that the trial court did not err in excluding the evidence or that the error was not prejudicial, we consider de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense. *Id*. at 58. The exclusion of evidence does not violate the defendant's right to present a defense if the defendant is still able to present relevant evidence to support their central defense theory. *State v. Arndt*, 194 Wn.2d 784, 812-13, 453 P.3d 696 (2019).

Significantly, because a defendant has "no constitutional right to present irrelevant evidence," the evidence presented must be at least minimally relevant to implicate the right to present a defense. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (emphasis omitted).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Because this is a PRP, we must examine whether Hicklin could establish that the exclusion of the evidence resulted in actual and substantial prejudice for a constitutional error. *Meredith*, 191 Wn.2d at 306; *see also In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013) ("If a constitutional error is subject to harmless error analysis on direct appeal, that same error alleged in a PRP must be shown to have caused actual and substantial prejudice in order for the petitioner to obtain relief.").

Hicklin argues that prior sexual history evidence was needed to show mutual consent to intimate physical contact and explain why there would be DNA on KH's neck. But Hicklin testified in his own defense that Hicklin invited KH to come over to his mother's house and use the hot tub and that when she arrived, the two sat on the couch kissing for approximately 15 minutes. He also testified that KH then left and did not return. Additionally, during closing arguments, Hicklin argued that DNA was on KH's neck from the two kissing.

Because Hicklin testified to his version of events and defense counsel argued Hicklin's defense theory to the jury, we hold that the trial court's exclusion of evidence did not deny Hicklin of his constitutional right to present a defense. *Arndt*, 194 Wn.2d at 812-13. Nor did the exclusion of evidence about a prior sexual relationship result in actual or substantial prejudice.

C.     No Violation of Constitutional Right to Confront Witnesses

Related to the right to present a defense, the Sixth Amendment also provides individuals with the right to confront adverse witnesses. U.S. CONST. amend. VI; *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002); *see also Hudlow*, 99 Wn.2d at 14-15 ("The sixth amendment to

11

the United States Constitution and Const. art. I, § 22 grant criminal defendants two separate rights: (1) the right to present testimony in one's defense, and (2) the right to confront and cross-examine adverse witnesses") (internal citations omitted)). "The primary and most important component is the right to conduct a meaningful cross-examination of adverse witnesses." *Darden*, 145 Wn.2d at 620. But like the right to present a defense, the right to confront witnesses is limited by considerations of relevance. *Id*. at 620-21. Accordingly, it is within the trial court's discretion to exclude cross-examination that it determines to be irrelevant. *Id*.

Here, as explained above, evidence of a prior sexual relationship would not have been relevant when Hicklin's defense was that the two did not have intercourse. He was able to testify to his version of events and explain why DNA could be on KH's neck. There is no right to question witnesses regarding irrelevant evidence. Therefore, Hicklin was not denied his right to confront adverse witnesses, nor did the trial court's ruling result in actual or substantial prejudice.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

To establish ineffective assistance of counsel, Hicklin must demonstrate that (1) defense counsel's performance was deficient and (2) this deficient performance was prejudicial. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). If the petitioner fails to satisfy one prong of this two-part test, we need not consider the other prong. *Id*. at 847.

Performance is deficient when it falls below an objective standard of reasonableness. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). There is a strong presumption that counsel did not perform deficiently, but this presumption can be overcome where there is no conceivable legitimate tactic explaining counsel's performance. *Id*.

"Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Estes*, 188

Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A reasonable probability is one that is sufficient to undermine confidence in the trial's outcome, and it is a lower standard than a preponderance standard. If a defendant's ineffective assistance of counsel claim is based on counsel's failure to make a motion, the defendant must demonstrate prejudice by first showing that the motion would likely have been granted. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009).

In the PRP context, a petitioner who successfully demonstrates prejudice in an ineffective assistance of counsel claim has necessarily shown actual and substantial prejudice sufficient to obtain collateral relief. *Crace*, 174 Wn.2d at 846-47.

Hicklin argues that defense counsel was ineffective by not attempting to have KH's past sexual history with Hicklin admitted under ER 404(b) and after KH opened the door during trial, and by not investigating more thoroughly Hicklin's claim of his past sexual history with KH.

A.      Failure to Argue an Alternative Basis to Admit Evidence

1.      ER 404(b)

Under ER 404(b), character evidence is not admissible to prove a person's character and that he or she acted in conformity with that character. However, it may be admissible for another purpose, such as a motive, plan, or intent to commit the crime at issue. *Id*. Hicklin argues he received ineffective assistance of counsel because counsel did not move to admit evidence of KH and Hicken's prior intimate relationship under ER 404(b).

As set forth above, Hicklin must show that a motion to admit evidence under ER 404(b) would have been granted. *See Sutherby*, 165 Wn.2d at 884.

Hicklin argued his theory of the case that KH came over based on a prior intimate relationship between the two and that she left to go to the store and never returned. Hicklin did

not argue that the two had consensual intercourse. As discussed above, the prior sexual history evidence would not be admissible under the rape shield statute. Even assuming the evidence was not barred by the rape shield statute, Hicklin still cannot show the trial court would have admitted it absent a valid basis for admissibility under ER 404(b). Accordingly, Hicklin cannot establish the prejudice prong of an ineffective assistance of counsel claim. *Sutherby*, 165 Wn.2d at 884. His claim fails.

2.      Opening the Door

The open-door doctrine permits a party to admit evidence on a topic that would normally be excluded. *State v. Rushworth*, 12 Wn. App. 2d 466, 473, 458 P.3d 1192 (2020). This doctrine "recognizes that a party can waive protection from a forbidden topic" by discussing the subject. *Id*. at 474. The classic example is when a witness opens the door and testifies to their good character, thereby allowing the other party to respond with evidence of prior bad acts to refute this testimony. *See Id*. at 473-74. Hicklin contends that KH's testimony opened the door to evidence of their prior sexual relationship, and that defense counsel performed deficiently by failing to introduce the evidence after KH opened the door.

As set forth above, Hicklin must show that a motion to admit evidence based on the open-door doctrine would have been granted. *See Sutherby*, 165 Wn.2d at 884.

Here, KH testified that she knew Hicklin for about three years through the recovery community. She also testified that the two were friends. She testified that they went to his mother's hot tub before where they "put [their] feet up" and "talk[ed]." 1 RP at 338. KH testified that she wore a bathing suit at that time. She also later testified that she deleted the word "naked" from Hicklin's message because it was inappropriate and "not something friends do." 1 RP at 321.

It is not likely the trial court would have admitted evidence of a prior sexual relationship under the theory that the door was opened by KH's testimony that she wore a bathing suit and that she and Hicklin put up their feet and talked. While evidence in the form of Hicklin's testimony that they were naked in the hot tub and had engaged in intercourse would be probative because it would contradict KH's testimony. At best, this evidence goes to the issue of KH's credibility. The rape shield statute does not allow evidence of a victim's past sexual behavior to go to the issue of credibility. RCW 9A.44.020(2). Hicklin remained able to present his account of the incident and maintain his theory that no intercourse occurred, as well as testifying about the fact that they had a prior relationship. Accordingly, Hicklin does not show that the trial court would have overruled its prior ruling regarding prior sexual history evidence and allowed the evidence after KH's testimony. Without this showing, Hicklin cannot demonstrate the prejudice prong of his ineffective assistance of counsel claim. *Sutherby*, 165 Wn.2d at 884. Accordingly, his claim fails.

B.  Failure to Investigate Further Reasons to Admit Evidence

With respect to the objective standard of reasonableness prong, trial counsel has a duty to investigate all reasonable lines of defense but has no duty to pursue strategies that reasonably appear unlikely to succeed. *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). "[F]ailure to investigate . . . when coupled with other defects, can amount to ineffective assistance of counsel." *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010). "The degree and extent of investigation required will vary depending upon the issues and facts of each case, but . . . at the very least, counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *Id*. at 111-12.

Hicklin asserts that defense counsel's performance fell below an objective standard of reasonableness by not researching further grounds to admit the prior sexual relationship evidence between Hicklin and KH. He also submits a defense attorney's declaration in support of this claim. The declarant states that defense counsel's performance fell below an objective standard of reasonableness by not researching this evidence further.

Performance is deficient when it falls below an objective standard of reasonableness. *Bertrand*, 3 Wn.3d 116 at 128. There is a strong presumption that counsel did not perform deficiently, but this presumption can be overcome where there is no conceivable legitimate tactic explaining counsel's performance. *Id*.

Here, the defense theory was that Hicklin and KH did not have sexual intercourse on the night in question. This was a strong theory supported by the evidence that no semen was detected on KH's vaginal swab. Hicklin was also excluded as a potential source of the semen detected on KH's pants. Evidence of a prior sexual relationship may have undermined Hicklin's theory. Moreover, it could potentially provide evidence of a motive for rape by showing that the two had sexual intercourse in the past and Hicklin expected that again on the night in question.

Based on the above, defense counsel had a conceivable, legitimate trial tactic not to further research or seek admission of the evidence. Accordingly, Hicklin does not show deficient performance to establish ineffective assistance of counsel on this basis. His claim fails.

CONCLUSION

Because Hicklin does not show that he is entitled to relief based on evidentiary error, constitutional error, or ineffective assistance of counsel, we deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Glasgow, J.